**NATIONAL COOPERATIVE REFINERY ASSOCIATION, a Kansas corporation, Plaintiff,**

v.

**James P. ROUSE, Trustee of the Bankruptcy Estate of Empire Oil & Gas Company, a/k/a Empire Drilling Company, a/k/a Colorado Empire Drilling Company, and Ralph W. Hoyer, Trustee of the Bankruptcy Estate of Alan Gable Oil Development Company, Defendants.**

**Civ. A. No. 85–K–1736.**

United States District Court,
D. Colorado.

May 7, 1986.

William R. James, Whitting & Matlock, P.C., Denver, Colo., for plaintiff.

Robert T. Cosgrove, Burns, Wall, Smith and Mueller, Denver, Colo., for Rouse.

T. Edward Icenogle, Calkins, Kramer, Grimshaw & Harring, Denver, Colo. and Ellen F. Warder, Hoyer, Hoyer & Berthold, Charleston, W.Va., for Hoyer.

## MEMORANDUM OPINION
## AND ORDER

KANE, District Judge.

An action in interpleader was filed pursuant to Fed.R.Civ.P. 22 and 57 and 28 U.S.C. §§ 1335 and 2201 (1982) by plaintiff National Cooperative Refinery Association. NCRA has paid into the registry of this

court to date some $42,000 in oil production proceeds. Claiming the pot are three parties: James P. Rouse, trustee of the bankruptcy estate of Empire Oil & Gas., etc.; Ralph W. Hoyer, trustee of the bankruptcy estate of Alan Gable Oil Development Company; and Deep Rock Oil Company, an apparently still solvent, wholly owned subsidiary of AGOD. Rouse has asserted crossclaims against the other two defendants based on the alleged invalidity or avoidability of certain assignments and transfers Empire executed in favor of Deep Rock shortly before Empire filed its petition in bankruptcy. Both Hoyer and Deep Rock (hereinafter referred to collectively as "Hoyer") now move pursuant to Rule 12(b) to dismiss these crossclaims or in the alternative to transfer venue to the United States District Court for the Southern District of West Virginia.

The grounds urged for dismissal of Rouse's crossclaims are:

(1) that this court lacks jurisdiction over the subject matter by reason of 28 U.S.C.S. § 1334 (Supp.1985), which provides that the district court in which a case under title 11 is commenced or pending shall have exclusive jurisdiction of all the property of the debtor wherever located;

(2) that this court lacks jurisdiction over the person by reason of the provisions of 28 U.S.C. § 1334 and 11 U.S.C. § 362 (1985), which require permission of the U.S. Bankruptcy Court for the Southern District of West Virginia before the commencement or continuation of proceedings against the debtor, and preclude any action against the trustee of a title 11 estate; and

(3) that venue is improper by reason of 28 U.S.C. § 1409, which in part provides that proper venue for a case arising in or related to a title 11 proceeding may be commenced in the district in which the title 11 proceeding is pending.

■ Hoyer relies on the rules of bankruptcy rather than the rules which govern jurisdiction and venue in an interpleader action. First, I must examine whether there is merit to Hoyer's assertion that the interpled fund at stake here is "property of the debtor" AGOD within the exclusive jurisdiction of the Bankruptcy Court for the Southern District of West Virginia. If it can be considered "property of the debtor" of *either* AGOD or Empire at the time of the commencement or continuation of that estate's bankruptcy proceedings, the automatic stay provision of 11 U.S.C. § 362(a) may operate effectively to divest this court of jurisdiction. I note that the purpose of the automatic stay is to "reinforce the jurisdiction of the bankruptcy court over the debtor's assets and forestall the race to levy upon or make claims against the debtor's property with possibly inconsistent results," *Holland America Insurance Co. v. Succession of Roy,* 777 F.2d 992, 995 (5th Cir.1985), *citing Wedgeworth v. Fiberboard Corp.,* 706 F.2d 541, 544 (5th Cir. 1983).

In *Shell Pipeline Corp. v. West Texas Marketing Corp.,* 540 F.Supp. 1155 (S.D. Tex.1982), title to 155,000 barrels of oil was disputed and became the subject of an interpleader action. ECI, one of the parties asserting a property interest in the oil, was an estate in bankruptcy. ECI sought to enjoin the interpleader action, thereby compelling adjudication of the various claims to the *res* within the setting of its bankruptcy proceeding. ECI asserted that the *res* was "property of the debtor" within the meaning of the automatic stay provision of 11 U.S.C. § 362(a). The district court disagreed that it was subject to the stay, however, stating:

> This interpleader action does not seek to obtain property from the debtor's estate, but rather to determine whether the oil is in fact property of the estate. ECI has cited no authority and the Court's research has failed to reveal any in which an interpleader action, naming a debtor as a claimant, has been construed as the assertion of a claim against the debtor or against his property.
>
> . . . .
>
> Unless and until it is found, from the evidence to be presented in a full trial on the merits, that ECI obtained an interest in the oil held by Shell, arguments predi-

cated upon property rights of ECI have no application. Only when and if ECI is found to have property interests in any of the 155,000 barrels of oil in dispute here would the bankruptcy rules applicable to property interests of the debtor possess any relevance. At this point in time they simply do not.

540 F.Supp. at 1161–62. *Accord, Price & Pierce International, Inc. v. Spicers International Paper Sales, Inc.*, 50 B.R. 25, 26 (S.D.N.Y.1985); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1305 (8th Cir.1977).

A different conclusion was reached in *NLT Computer Services Corporation v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir.1985), *vac'g* 31 B.R. 960 (M.D. Tenn.1983), however. There, NLT interpled into the district court moneys due on a preexisting obligation to Capital, faced as NLT was with competing claims of four creditors of Capital. Capital became a title 11 debtor after the filing of the interpleader, and itself asserted no interest in the interpled *res*. The district court's finding that its entertainment of the interpleader was not subject to the automatic stay provisions of 11 U.S.C. § 362 (as the proceeding was not one " 'against' the debtor and/or property of the estate") was vacated by the Sixth Circuit Court of Appeals.

I find that the facts of *NLT Computer Services* are distinguished from those presented in the instant situation, so that, notwithstanding the Sixth Circuit's holding, *Shell* rather than *NLT Computer Services* is the proper precedent. In *NLT Computer Services*, the bankruptcy estate itself, Capital, asserted no interest in the interpled *res*. Capital was not an adverse party to the interpleader; rather, it was content to allow its various creditors to "slug it out" among themselves for *funds the title to which it was undisputed* was vested in Capital. To have proceeded with the interpleader therefore would not only have been redundant in light of the ongoing bankruptcy litigation, but would potentially have allowed these four creditors of Capital ratably larger pieces of the estate than would be available to other creditors, who were forced to "share and share alike" in the remainder of the estate's assets.

In contrast, in the instant situation, as in *Shell*, the adverse relationship is not restricted to the creditors of a bankrupt; rather, two estates in bankruptcy (as well as a still-solvent entity) claim adversely. I do not see at this juncture that assigning the *res* to either bankruptcy court would be anything but presumptive. Considerations of fairness and due process require a determination of whose "property" the *res* is be made first. In turn, this will determine which bankruptcy court, if either, has jurisdiction for purposes of the property's further disposition. I acknowledge that this prior determination involves the construction of the federal bankruptcy rules, as the validity or avoidability of the transfers—the subject of Rouse's crossclaims—depends on bankruptcy law as well as state substantive law. It is, as I see it, however, only a determination of the "transfers issue" which will resolve the question of whether the *res* is "property of [either] debtor" within the exclusive jurisdiction of one or the other bankruptcy court. Therefore, I take it upon myself to make this determination, rather than presumptively require one trustee to litigate his rights in the other's bankruptcy proceeding.

I hold that, because the purpose of this interpleader is to determine title to the *res*, the *res* is not at this point property of any "debtor" within the meaning of the automatic stay provisions of 11 U.S.C. § 362(a).

Therefore, the questions of jurisdiction and venue of this court over Rouse's crossclaims will be determined by the Federal Rules of Civil Procedure, rather than the bankruptcy rules. Although posed by Hoyer in the context of the bankruptcy rules rather than the rules governing interpleader, the issues of jurisdiction and venue on the crossclaims require consideration.

## I. *Jurisdiction over the Subject Matter of the Crossclaims.*

Whether this court has subject matter jurisdiction over Rouse's crossclaims is a two-step inquiry. The first step is to deter-

mine whether subject matter jurisdiction over the underlying interpleader action exists; the second is to determine whether jurisdiction over the crossclaims is ancillary to that of the underlying proceeding.

Subject matter jurisdiction over the interpleader is established variously depending on which of the two alternative mechanisms available for bringing interpleader is employed: Rule 22 of the Federal Rules of Civil Procedure, or a trio of statutes, 28 U.S.C. §§ 1335, 1397, and 2361. Each method has different jurisdictional requirements; plaintiff NCRA has relied on both in its jurisdictional statement. Interpleader under the Rule carries the normal diversity requirements of amount in controversy over $10,000 and total diversity of citizenship between the plaintiff stakeholder and all defendants. Interpleader under the statutes imposes subject matter jurisdictional requirements which are even less strict: amount in controversy of $500, and diversity of citizenship between any two of the *claimants*. The requirements of both Rule and statutory interpleader happen to be met here: at stake is roughly $42,000, a fund which continues to accrue; NCRA is a citizen of Kansas, Rouse of Colorado, Hoyer and Deep Rock of West Virginia. With regard to my entertainment of the underlying interpleader action, therefore, I find I have subject matter jurisdiction to spare.

■ The second step of the inquiry—whether there is subject matter jurisdiction over the crossclaims—depends on whether the crossclaims meet the ordinary requirements of the Federal Rules of Civil Procedure for bringing crossclaims. The interpleader action, whether brought pursuant to rule or statute, must "be conducted in accordance with these rules", Fed.R.Civ.P. 22(2); thus, the crossclaims are appropriate if they meet the requirements of Fed.R. Civ.P. 13(g). When subject matter jurisdiction over the underlying interpleader exists, therefore, *and* the crossclaims meet the requirements of Rule 13(g), subject matter jurisdiction over the crossclaims will be ancillary to that of the interpleader action. *See* 3A J. Desha Lucas & J. Moore,

*Moore's Federal Practice* ¶ 22.15 (1985) *and Bank of Neosho v. Colcord*, 8 F.R.D. 621, 623 (W.D.Mo.1949).

■ Rule 13(g) states in pertinent part: A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. To the extent the crossclaims pertain to the interpled funds themselves, then, the crossclaims relate to "property that is the subject matter of the original action" and are appropriately brought here.

I note that there is property at stake via the crossclaims which is separate from the *res* itself, this property being, first, title to the leasehold interests which give rise to the disputed production proceeds; and, second, costs and attorneys fees sought incidental to a judgment for Rouse on the crossclaims. However, the crossclaims, in alleging that certain assignments and transfers made by Empire to Deep Rock or AGOD are void—and thus in asserting a broader entitlement than the *res* itself—it seems to me do not merely "arise out of the transaction or occurrence that is the subject matter of the original action," but are integral to its just determination. I find, therefore, that this court has ancillary subject matter jurisdiction over the crossclaims.

II. *Personal Jurisdiction for Purposes of the Crossclaims.*

My analysis here parallels the two-step inquiry of the previous section, with some variations. I examine first whether this court has personal jurisdiction over Hoyer and Deep Rock for purposes of the underlying interpleader action; second, I examine any special circumstances introduced by the crossclaims which might vitiate that personal jurisdiction.

As mentioned in the previous section, NCRA asserted both the Rule interpleader and the statutory interpleader in its juris-

dictional statement. NCRA served process upon all defendants "the hard way," however (which, I note in passing, was also the way it established diversity jurisdiction in its complaint): that is, consistently with the Rule rather than the statute. Personal service was effected on all defendants via Fed.R.Civ.P. 4(e), incorporating Colorado's long-arm statute[1], the mechanism for obtaining personal jurisdiction in an ordinary diversity action, *rather* than via the nationwide service of process available pursuant to the interpleader statute.

NCRA chose the wiser course in proceeding as if this were an ordinary diversity action. There is considerable case law and literature dealing with the inequity of obtaining personal jurisdiction over a nonresident claimant by means of nationwide service of process, thence to subject the claimant to personal liability by crossclaim which could exceed the amount of the interpled *res* itself.[2] The Tenth Circuit, cognizant of this potential inequity, has held that personal jurisdiction of the court in a statutory interpleader is strictly limited to disposition of the *res*. *Knoll v. Socony-Mobil Oil Co.*, 369 F.2d 425 (10th Cir.1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967); *impliedly in accord, Northern Natural Gas Co. v. Grounds*, 292 F.Supp. 619, 639–40 (D.Kan.1968), *aff'd on this issue, rev'd on other grounds*, 441 F.2d 704, 715 (10th Cir.1971), *cert. denied* 404 U.S. 951, 9 S.Ct. 268, 30 L.Ed.2d 267.

■ Neither this limitation on personal jurisdiction nor the inequity that prompted it need trouble us because the statutory method of nationwide service of process was *not* employed. *See, e.g., Marine Bank & Trust Co. v. Hamilton Bros., Inc.*, 55 F.R.D. 505, 506 (M.D.Fla.1972). I need not

inquire into the propriety of service nor into the due process sufficiency of Colorado's long-arm statute, because service was *accepted* by Hoyer and Deep Rock. Both these parties have appeared to assert a claim to the interpled fund. I hold that, because of the crossclaims' ancillary relation to the underlying subject matter of the original action, personal jurisdiction over Hoyer and Deep Rock on the crossclaims is coextensive with the personal jurisdiction it is undisputed this court has in the interpleader. *Bank of Neosho*, 8 F.R.D. at 624. Hoyer and Deep Rock's failure to object to personal jurisdiction in the interpleader action constitutes waiver of any defense of lack of personal jurisdiction on the crossclaims, Fed.R.Civ.P. 12(h), including that of the dubious "immunity" that Hoyer now asserts attaches to him by virtue of his status as trustee of a title 11 estate.

### III. *The Propriety of Venue in this Court.*

■ Since this interpleader action is under Rule 22(1) rather than statute, the venue requirements of an ordinary diversity action must be met rather than the alternative provision of 28 U.S.C. § 1397. These requirements of venue in a diversity action are provided by 28 U.S.C. § 1391 (1982), which allows the action to be brought "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." The oil wells are in Colorado, and it is entitlement to the proceeds from the production of these wells which constitutes the "claim" giving rise to the interpleader. Venue in this court is therefore appropriate for the interpleader. With respect to the crossclaims, venue is independently as well as derivatively appropriate here, as those

---

1. § 13–1–124, C.R.S., Colorado's long-arm statute, states in pertinent part:

   *Jurisdiction of courts.* (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

(c) The ownership, use, or possession of any real property situated in this state[.]

2. *See, e.g.,* Z. Chafee, *Broadening the Second Stage of Federal Interpleader*, 56 Harv.L.Rev. 929 (1943); *and* C. Wright, A. Miller, M. Kane, 7 *Federal Practice and Procedure -- Civil* § 1715 (1972 and Supp.1983) and cases cited therein.

crossclaims—involving entitlement to property interests in oil and gas leasehold estates in Colorado—also "arose" in this district.

## IV. *The Alternative Motion to Transfer Venue.*

Hoyer requests that, in the event his Rule 12(b) motions to dismiss are denied, venue for this interpleader and its attendant crossclaims be transferred to the United States District Court for the Southern District of West Virginia.

 In determining the propriety of changing venue, the two most significant factors to be considered are the convenience of the parties and witnesses and the interests of justice. 28 U.S.C. § 1404(a). Hoyer asserts he is the court-appointed trustee of a title 11 case pending in West Virginia; that AGOD and Deep Rock are West Virginia corporations with principal places of business in that state; that the controversy involves the "construction, interpretation and enforcement of an order of the United States Bankruptcy Court for the Southern District of West Virginia"; and that "the defendant Rouse is a plaintiff in a civil action in the Southern District of West Virginia which asserts similar causes of action regarding different leases and which would involve identical legal issues." As Rouse notes in his opposing brief, however, Rouse and Empire are residents of Colorado, and this action concerns ownership of interests in real property located in Colorado. The order of the bankruptcy court Hoyer refers to specifically states it is not binding upon Rouse or Empire. Finally, Rouse states by affidavit that the civil action in West Virginia referred to by Hoyer does not involve the "ownership and/or transfer of oil and gas leases located in the State of Colorado." I note that the burden to show that justice and convenience require transfer rests with the movant, *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir.1978). In this regard, Hoyer has offered no reasons which convince me that the interests of justice would be particularly furthered by transferring this action. Any expense saved

Hoyer or Deep Rock by the proposed transfer would only shift to Rouse.

 In general, the plaintiff's choice of forum is given substantial deference when considering the propriety of changing venue. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967). Because the plaintiff in this case is a disinterested stakeholder, I do not feel bound by the plaintiff's choice of forum. I do feel that a different concern, one of those raised by Rouse, above, *is* important enough to justify maintaining this action here, however. The question to be decided here is that of title to the production proceeds and the various leasehold interests which gave rise to them. The real property which gives rise to this litigation is located in Colorado. Questions to be decided here will require a construction of Colorado law. This reason is sufficient to justify denial of the motion to transfer venue to the West Virginia court.

It is hereby ORDERED:

1. Defendants Hoyer and Deep Rock's motion to dismiss the crossclaims is DENIED.

2. Defendants Hoyer and Deep Rock's alternative motion to transfer venue of this interpleader proceeding to the United States District Court for the Southern District of West Virginia is DENIED.