OPINION
HAMILTON, Circuit Judge:
The appellants, Canal Corporation (Canal) and Resource Evaluation and Development, Inc. (RED), appeal from the judgment of the district court affirming the decision of the United States Bankruptcy Court for the Eastern District of Virginia. The decision of the bankruptcy court excluded Canal and RED from participating on equal grounds with the appellees in the *398 distribution of a constructive trust held by the trustee of the bankrupt estate of Robert D. Johnson. The bankruptcy resulted from the collapse of an illegal pyramid scheme which Robert Johnson perpetrated. The bankruptcy court permitted a class of plaintiffs, including the appellants and the appellees, to bring suit seeking a declaratory judgment that funds in the estate were held in constructive trust for them. The bankruptcy court, on December 21, 1987, held that the bulk of the funds in the estate were held in constructive trust for the defrauded investors. The bankruptcy court later ordered distribution of these funds to the appellees and excluded Canal and RED from this distribution. Canal and RED appealed this decision to the district court which affirmed the decision of the bankruptcy court. Canal and RED timely appealed to this court.
This appeal presents the issues of whether the bankruptcy court had jurisdiction to determine how to distribute the constructive trust held by the estate, whether it was error to distribute the constructive trust directly to individuals instead of through the general partners and the limited partnerships which were the investment vehicles in the scheme, and whether the bankruptcy court erred in considering an objection to the proposed distribution which was filed after the time period set by the bankruptcy court for such objections. Because we find that the bankruptcy court had jurisdiction to distribute the trust and that there was no error with respect to the remaining issues, we affirm the judgment of the district court.
I.
The debtor in bankruptcy, Robert D. Johnson, fraudulently induced parties to invest in an industrial wine import venture that was, in fact, a pyramid or Ponzi scheme. The wine did not exist and Johnson used the money for himself or to pay off previous investors in order to lure in more. The scheme ran from 1968 until 1974, raising about $26 million from about 400 investors. Much of the money was raised through limited partnerships. In 1973 and 1974, seventeen limited partnerships were set up under Virginia law in order to invest in Johnson’s wine scheme. Canal was the general partner for ten of these limited partnerships, RED was general partner for the remaining seven. Mr. Finnman and other investors channeled their investments in the scheme through the limited partnerships.
In the middle of 1974, the pyramid scheme collapsed and Johnson pled guilty to various fraud charges and was sentenced to six years imprisonment. The wine scheme and its demise generated numerous cases that ended up in this court, the District Court for the Eastern District of Virginia, the Bankruptcy Court for the Eastern District of Virginia, and the United States Tax Court.
An involuntary bankruptcy petition was filed against Johnson in 1974, under the Bankruptcy Act (Title 11), by some of the defrauded investors. Canal and RED filed proofs of claim in Johnson’s bankruptcy case on behalf of the limited partnerships. Both the Internal Revenue Service (IRS) and the Commonwealth of Virginia filed tax claims in the case as well. The trustee sought a declaration that the assets could not be used for the tax claims because they were held in constructive trust for the defrauded investors.' Though the bankruptcy court dismissed the trustee’s action for lack of standing, In re Johnson, 55 B.R. 800 (Bankr.E.D.Va.1985), it allowed the investors to file suit against the trustee for a determination of the same issue. The bankruptcy court ultimately certified the matter as a class action for the benefit of the defrauded investors and held that the funds were the property of the plaintiff class, in constructive trust, and not subject to tax claims. In re Johnson, 80 B.R. 791 (Bankr.E.D.Va.1987). The bankruptcy court made this finding subject to its approval of the equitable distribution of the funds. The IRS appealed this decision to the district court, which affirmed the bankruptcy court. The IRS subsequently appealed to this court; however, it dismissed the appeal under Fed.R.App.P. 42(b) before a decision was reached.
*399 The bankruptcy court then set about to determine the proper method of distribution.' On December 20, 1989, the bankruptcy court entered its first distribution order. This order defined the plaintiff class as consisting of all persons who invested in Johnson’s wine scheme and who had not been repaid prior to June 13, 1974. The order provided that: (1) claims filed by the general partners on behalf of the limited partnerships would be paid to the general partners, and (2) class members’ pro rata share of the funds owing would, absent objection, be paid to the general partners for distribution to the limited partners, subject to claims for expenses and indemnification incurred on behalf of the limited partnerships by the general partners. This was made subject to the right of the limited partners to object to this form of distribution by February 28,1990. Canal and RED filed claims for expenses and indemnification on behalf of the limited partnerships which were in excess of the total amount available for distribution. At this point, the interests of Canal and RED and the limited partners diverged.
Ten individual limited partners timely filed objections to this proposed distribution. Robert Finnman filed his objection on May 10,1990. The bankruptcy court held a hearing on these objections and denied Canal and RED’s claims for expenses and indemnification. On May 31, 1990, it ordered counsel for the class plaintiffs to pay appropriate pro rata shares directly to the individual partners who had filed objections.[1] Canal and RED appealed the May 31, 1990 order to the district court. After a hearing, the district court affirmed the judgment of the bankruptcy court in a ruling from the bench. Canal and RED noticed a timely appeal and the district court stayed its judgment pending appeal.
II.
Findings of fact by the bankruptcy court in proceedings within its full jurisdiction are reviewable only for clear error and legal questions are subject to de novo review. Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir.1988); In re Crouthamel Potato Chip Co., 786 F.2d 141, 144 (3d Cir.1986) (court of appeals reviews issues implicating interpretation and application of the Bankruptcy Code and Rules de novo).
III.
The preeminent issue raised in this appeal concerns the jurisdiction of the bankruptcy court to enter the December 20, 1989 and May 31, 1990 orders. Canal and RED do not contest the bankruptcy court’s jurisdiction to make the initial determination on December 21, 1987, that the funds were held in constructive trust; however, they argue that once the bankruptcy court determined that the funds were held in constructive trust, the bankruptcy court was without jurisdiction to determine who was entitled to distribution from the trust.
Federal bankruptcy courts, like the federal district courts, are courts of limited jurisdiction. Their jurisdiction is defined by 28 U.S.C. §§ 157 and 1334. Three classes of controversy can arise before a bankruptcy court: core proceedings, non-core related proceedings, and non-core unrelated proceedings. See, e.g., In re M. Paolella & Sons, Inc., 85 B.R. 965, 969 (Bankr.E.D.Pa.1988). Federal bankruptcy judges are authorized to enter appropriate orders and judgments in core proceedings. 28 U.S.C. § 157(b). Bankruptcy judges may also hear non-core related proceedings, but they may not enter final orders; in such cases they are usually required to submit proposed findings and conclusions to the district court where they are subject to de novo review. 28 U.S.C. § 157(c).
Canal and RED initially point out that the bankruptcy court did not make an explicit finding that its proceedings connected to the December 20, 1989 order and the May 31, 1990 order were or were not core matters. They contend that such a *400 finding is required pursuant to 28 U.S.C. § 157(b)(3) and that in the absence of an explicit finding on this question the bankruptcy court lacked jurisdiction to enter these orders.
There is a split of authority as to whether the absence of an explicit core finding under § 157(b)(3) deprives the bankruptcy court of jurisdiction and we have not considered the question. Some courts hold that failure of the bankruptcy court to make a § 157(b)(3) finding deprives the bankruptcy court of jurisdiction; and the failure of the parties to request the finding does not waive their right to later object that the finding was a necessary predicate to jurisdiction. In re Wefco, 97 B.R. 749, 750-51 (E.D.N.Y.1989) (failure to determine whether matter is core or non-core is not harmless error); In re Marill Alarm Systems Inc., 81 B.R. 119, 122 (S.D.Fla.1987), aff'd sub nom. Marill Alarm Sys. v. Equity Funding, 861 F.2d 725 (11th Cir.1988) (if bankruptcy judge enters final judgment without making determination under § 157(b)(3) it must be invalidated; failure of parties to move for determination does not waive error); In re Nell, 71 B.R. 305, 310 (D.Utah 1987) (same). Other courts hold that a party’s failure to request a 157(b)(3) finding waives any objection to the lack of such finding. In re Rath Packing Co., 75 B.R. 137, 138 (N.D.Iowa 1987), aff'd sub nom. Rath Packing Co. v. United Food, 860 F.2d 1086 (8th Cir.1988), cited in 1 Collier on Bankruptcy (MB) 113.01 at 3-52 (15th ed. 1989); Rainey v. International Harvester Credit Corp., 59 B.R. 987, 989-90 (N.D.Ill.1986).
We are persuaded that the latter view is the better interpretation of § 157(b)(3). Applying this view to this appeal, it is clear that Canal and RED waived their right to object to the bankruptcy court’s failure to make a § 157(b)(3) finding. Canal and RED clearly acquiesced in the bankruptcy court’s order of December 21, 1987, which held that the bulk of the funds in the estate were held in constructive trust, and its initial distribution order of December 20, 1989. The bankruptcy court made no determination in those orders that the matters were core or non-core and Canal and RED did not object. Now, after twice submitting to the bankruptcy court’s treatment of the proceedings, Canal and RED object to the bankruptcy court’s failure to make an explicit determination that the proceedings culminating in the December 20, 1989 and May 31, 1990 orders were core. Clearly Canal and RED were aware that the bankruptcy court considered these matters to be core and within its jurisdiction and they did not object to the proceedings in any way, much less to the lack of a jurisdictional finding under § 157(b)(3). By failing to object to the lack of a jurisdictional determination under 28 U.S.C. § 157(b)(3), and acquiescing to the jurisdiction of the bankruptcy court to enter dis-positive orders on December 21, 1987 and December 20, 1989, Canal and RED waived any requirement the bankruptcy court had to make a determination of its jurisdiction under 28 U.S.C. § 157(b)(3).[2]
Determining if the bankruptcy court actually had the jurisdiction to enter a dis-positive order on distribution of the constructive trust presents a more difficult question. In considering such questions, we are cognizant of the constitutional limitations imposed on the bankruptcy court’s jurisdiction. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[3] *401 In Marathon, the Court found it impermissible to grant broad jurisdiction to a non-Article III court. Under Marathon, a bankruptcy court can fully hear and decide only those matters arising in or under Title 11. Congress responded to Marathon by limiting the bankruptcy court’s jurisdiction to hear and issue dispositive orders to core matters only. 28 U.S.C. § 157(b). The bankruptcy court could hear related matters only where the parties consented or where the district court made the actual dispositive findings. 28 U.S.C. § 157(c). Accordingly, the validity of the December 20, 1989 and May 31, 1990 dispositive orders hinges on whether the entitlement to the funds at issue was or was not a core matter.[4]
When the court determined that a constructive trust existed, Canal and RED argue, it was tantamount to a decision that the property was never a part of the bankruptcy estate. Since the property was never part of the estate, the court lacked the power to adjudicate its distribution in the December 20, 1989 and the May 31, 1990 orders.
Congress set forth a non-inclusive list of categories of bankruptcy proceedings that constitute core proceedings. 28 U.S.C. § 157(b)(2). Many courts construe the term “core proceedings” quite broadly. Indeed, the ambiguity in § 157(b)(2) invites such interpretation with such broadly inclusive language that encompasses proceedings “affecting the liquidation of assets of the estate” and matters “concerning the administration of the estate.” 28 U.S.C. § 157(b)(2)(A),(O). Given the circumstances of this case, we find it unnecessary to resort to this broad language and thus risk exceeding the constitutional limitations of Marathon.
Several parts of 28 U.S.C. § 157(b)(2) are identified by group as generally concerning the property held by the estate, including: 157(b)(2)(E): turnover of property of the estate; 157(b)(2)(K): validity and priority of liens; and 157(b)(2)(M) & (N): the sale, use or lease of property. 5 Norton Bankruptcy Law and Practice (Callaghan) § 5.14 at 89 (1987); 1 Collier on Bankruptcy (MB) ¶ 3.01 at 3-52 (15th ed. 1989). In addition, § 157(b)(2)(B) clearly defines as core those proceedings that deal with the allowance or disallowance of claims against property of the estate. These sections, together with the broad scope of property of the estate under 28 U.S.C. § 541,[5] indicate that a wide range of proceedings concerning property of the estate fall within the core proceeding definition. 5 Norton Bankruptcy Law and Practice (Callaghan) § 5.14 at 89 (1987).
Included in property of the estate under § 541 is any property held by the estate in trust. In this case, a constructive trust ex maleficio arose from the wrongdoing of Robert Johnson. Though the trustee must turn over the property to the beneficiaries, those beneficiaries are required to identify to the bankruptcy court the trust funds and sufficiently trace those funds. Id. (citing Central States Corp. v. Luther, 215 F.2d 38 (10th Cir.1954) cert. denied 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955)); Morris Plan Indus. Bank v. Schorn, 135 F.2d 538 (2d Cir.1943); Malone v. Gimpel, 151 F.Supp. 549 (N.D.N.Y.1956). The burden is upon a claimant to prove the existence of an alleged trust. Sonnenschein v. *402 Reliance Ins. Co., 353 F.2d 935 (2d Cir.1965). A claimant must, therefore, prove in a bankruptcy proceeding the existence of a trust and his rights to it. Clearly, the only proper forum for determining whether assets held by a debtor are held in constructive trust is the bankruptcy court, and such proceedings must be considered core proceedings. A determination of the proper beneficiaries of that trust is inextricably tied to the finding of a constructive trust. Distribution of the trust to the proper beneficiaries necessarily is predicated upon a determination of who those beneficiaries are. The finding of a constructive trust by the bankruptcy court and a determination of the proper distribution of that trust are intimately tied to the traditional bankruptcy functions and estate, and, therefore, are core matters within the clear jurisdiction of the bankruptcy court.
Canal and RED contend that, as in In re Xonics, Inc., 813 F.2d 127 (7th Cir.1987), and Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co., 790 F.2d 1121 (4th Cir.1986), once an estate has no interest in property claimed by the debtor, it is without jurisdiction to adjudicate disputes concerning that property. In Xonics, the bankrupt paid various sums into an escrow account and a dispute developed between the parties entitled to the funds in the account. While the dispute was pending, the bankruptcy court confirmed the debt- or’s plan of reorganization and the debtor abandoned its interest in the escrow account. In analyzing the bankruptcy court’s jurisdiction, the Xonics court stated that once the debtor disclaimed an interest in the escrow, the bankruptcy court had no jurisdiction over that escrow. In Mid-Atlantic the debtor held a check which was payable jointly to itself and a supplier but the clear intention of the drafter and the payees was that the check be forwarded to the supplier. This Court concluded that where a debtor holds property in trust for another the “ ‘sole permissible administrative act’ of the trustee or debtor in possession is to pay over or endorse the property to the beneficiary or beneficiaries of the trust.” Mid-Atlantic at 1126, quoting Georgia Pacific Co. v. Sigma Serv. Corp., 712 F.2d 962, 968 (5th Cir.1983).
Neither Xonics nor Mid-Atlantic required the bankruptcy court to determine the proper beneficiaries of the trusts; they were apparent. Neither case required the court to determine the assets of the trust; this too was apparent. In this case, it was necessary for the bankruptcy court to determine the proper beneficiaries concurrent with its finding of a constructive trust. Xonics and Mid-Atlantic did not concern the jurisdiction of the bankruptcy court to determine the beneficiaries of the trust; they merely stand for the proposition that once the trust is established and the beneficiaries are undisputed, the estate must pay over the res. This proposition is entirely consistent with our holding here. In this case, the bankruptcy court had to exercise its clearly permitted statutory authority to separate those assets in the bankruptcy estate obtained ex maleficio and to determine the constructive trust before assets could be given to any beneficiary. Necessary to the determination of the constructive trust was a finding of the proper beneficiaries and their respective interests. Accordingly, the bankruptcy court had jurisdiction to enter a dispositive order on the distribution of the constructive trust.
IV.
Even if the distribution was not a core matter, it is at least a noncore related matter to which, in these circumstances, the parties impliedly consented to allowing the bankruptcy court to enter a dispositive order.
Related proceedings cannot be treated as core proceedings pursuant to Marathon and 28 U.S.C. §§ 157(b)(1), (c)(1) and (c)(2). A decision as to how to distribute assets held by a debtor’s estate in constructive trust would clearly seem to be a matter at least related to a Title 11 case. Equitable title is in the bankruptcy trustee. The bankruptcy court had to initially determine that the assets belonged to the plaintiff class to the exclusion of others such as the IRS and the Commonwealth of Virginia. It is not far removed from that determination *403 to decide which members of the beneficiary class are entitled to distribution. Once the trust was found, the money must be distributed somehow. As discussed above, a finding of who the beneficiaries are is inextricably entwined with finding the constructive trust.
Courts have adopted an expansive definition of what is a related proceeding. Collier on Bankruptcy (MB) 113.01 at 3-28 (15th ed. 1989). “[Although there may be situations in which ‘an extremely tenuous connection to the estate’ would not justify the existence of jurisdiction, ‘related to’ jurisdiction is to be broadly interpreted.” Id. (quoting In re Salem Mortgage Co., 783 F.2d 626 (6th Cir.1986); and citing In re Southern Industrial Banking Corp., 809 F.2d 329 (6th Cir.1987)) (The court had jurisdiction because, as here, the dispute arose out of the bankruptcy proceedings). Based on this expansive definition and the nexus between the Title 11 proceeding and this dispute between the class beneficiaries, this is a matter at least related to a Title 11 proceeding and within the jurisdiction of the bankruptcy court.
The finding that the distribution is a matter related to a Title 11 proceeding does not mean that the bankruptcy court has the power to make a dispositive finding with respect to the constructive trust. As was discussed above, bankruptcy judges may hear non-core related proceedings, but they may not enter final orders; in such cases they are usually required to submit proposed findings and conclusions to the district court where they are subject to de novo review. 28 U.S.C. § 157(c). The only exception to this requirement occurs when the district court refers a non-core related matter to the bankruptcy court under § 157(c)(2). Under § 157(c)(2) a bankruptcy court may enter appropriate orders and judgments in non-core related matters where such matters are referred by the district court[6] and it has the consent of all the parties. The statute does not address the question of whether consent must be express or whether it may be implied. Various courts and commentators have taken differing approaches.
Some courts hold that consent must be express and that failure to object to the bankruptcy court exercising jurisdiction in a related proceeding does not waive the right to claim that the bankruptcy court lacked jurisdiction. In re Nell, 71 B.R. 305, 311 (D.Utah 1987); See Norton Bankruptcy Law and Practice (Callaghan) § 5.33 (1987) (concluding that consent to entry of judgment in non-core related proceedings must be express). Other courts hold that a party’s right to challenge entry of judgment by the bankruptcy court in a non-core related matter can be waived by failure to make a timely objection. In re Men’s Sportswear, Inc., 834 F.2d 1134, 1137-38 (2d Cir.1987); In re Daniels-Head & Assocs., 819 F.2d 914, 918-19 (9th Cir.1987); In re Southern Indus. Banking Corp., 809 F.2d 329, 331 (6th Cir.1987); Lombard-Wall Inc. v. New York City Housing Devel. Corp, 44 B.R. 928, 12 C.B.C.2d 492 (S.D.N.Y.1984).
The substantial weight of authority, indicates that a party can impliedly consent to entry of judgment by the bankruptcy court in a non-core related matter. Canal and RED’s acquiescence to the December 20, 1989 order constitutes such a waiver. Canal and RED were apparently content with the December 20,1989 order which contemplated distribution through the general partnerships. They consented without objection to the court deciding to distribute through them. They did not object to the court’s jurisdiction to reconsider the December 20, 1989 order after the objection of the limited partners. It was only after the bankruptcy court decided to distribute directly to the limited partners that objections as to jurisdiction arose. Canal and RED failed to object to the bankruptcy court’s determination of how the trust was to be distributed. They, therefore, impliedly consented to the bankruptcy court en *404 tering a dispositive order distributing the trust.
V.
Canal and RED contend that the bankruptcy court erred as a matter of state law in disregarding the limited partnerships as legal entities entitled to a pro rata share of the proceeds and that it erred in disregarding the partnership agreements and Virginia law in making the distributions directly to the limited partners.
Canal and RED argue that, under former Va.Code § 50-69 (repealed by Acts 1985 ch. 607, effective January 1, 1987), limited partners have no interest in the partnership property and, therefore, cannot make claims against the funds at issue here. See In re Pischke, 11 B.R. 913, 916-17 n. 2 (Bankr.E.D.Va.1981) (under Virginia law “it is clear that ... a limited partner ... has no interest in the property of the partnership”). Canal and RED also argue that the partnership agreement and Virginia law dictate that any distributions made of partnership property must be channeled through the general partner because the general partner is the only party permitted to wind up the partnership and settle accounts.
As appellees correctly point out, in opposition to Canal and RED’s arguments, even though the existence of a claim is controlled by state law, the allowance or disallowance of a claim in bankruptcy is a matter of federal law left to the bankruptcy court’s exercise of its equitable powers. In re Northway Agencies, Inc., 106 B.R. 29, 32 (N.D.N.Y.1989); In re Shelter Enterprises, Inc., 98 B.R. 224, 229 (Bankr.W.D.Pa.1989); In re Fantastik, Inc., 49 B.R. 510, 513 (D.Nev.1985). The bankruptcy court was clearly permitted to deny the general partners’ claims under its federal equitable power and neither Virginia law nor the partnership agreement governs how the bankruptcy court must distribute assets.
To the extent that Canal and RED argue that Virginia law and the partnership agreement dictate that the appellees had no valid claims in the first place, it is clear that Canal and RED did not timely object before the bankruptcy court to the claims of the investors. A claim is deemed allowed unless objection is taken before the bankruptcy court. 11 U.S.C. § 502(a). Having failed to object to the bankruptcy court, Canal and RED are precluded from doing so on appeal. The investors, therefore, have valid claims which neither the partnership agreement nor Virginia law precludes and the bankruptcy court properly considered these claims.
VI.
With regard to the issue of the timeliness of Pinnman’s objection, neither Canal nor RED objected to the late filing of the objection in the bankruptcy court. Finnman submitted an affidavit to the effect that he filed his objection as soon as he received notice of his right to file. Since the time for filing was set by the bankruptcy court in its December 20, 1989 order, the bankruptcy court had the power to waive noncompliance with the terms of that order absent prejudice to Canal. Canal has made no such showing of prejudice and, therefore, we see no compelling reason to depart from the well established rule that an issue not raised below should generally not be considered on appeal. See, e.g., Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); United States v. The Barge Shamrock, 635 F.2d 1108 (4th Cir.1980), cert. denied sub nom. Shell Oil Co. v. United States, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981).
For the reasons stated herein, the judgment of the district court is hereby affirmed.
AFFIRMED.

. Not all of the limited partners filed objections. Canal and RED received approximately $70,000 despite the disallowance of their claims.

. However, we do not intend to hold that Canal and RED waived any objection to jurisdiction because they did not object to the lack of a jurisdictional finding under § 157; we hold only that the lack of a jurisdictional finding under § 157 does not, in itself, deprive the bankruptcy court of jurisdiction in these circumstances.

. The Supreme Court, in Thomas v. Union Carbide Agria Products Co., 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), held that Marathon stands only for the proposition that a traditional contract action arising from state law is precluded from the bankruptcy court’s jurisdiction to adjudicate and issue final orders without consent. Accord In re Harbour, 840 F.2d 1165 (4th Cir.1988). We do not hold, in this case, that the bankruptcy court’s jurisdiction is constitutionally limited to matters within the traditional functions of the bankruptcy court as the plurality’s holding in Marathon was originally understood to indicate. Neither can we say, however, that the sole limitation of the bankruptcy court’s *401 jurisdiction to adjudicate and enter final orders without the consent of the parties depends on whether or not the action involved is a traditional contract action under state law. The jurisdictional concerns raised by Marathon are relevant even though its holding was limited in subsequent cases.

. The parties do not contest, and it seems clear, that the initial determination, on December 21, 1987, that the funds were held in constructive trust was a core proceeding. Various courts have held that actions to impose a constructive trust fall within the definition of core proceedings under the Bankruptcy Code. In re Morris, 55 B.R. 615, 616-17 (N.D.Tex.1985); Hauytin v. Grynberg, 52 B.R. 657, 661 (Bankr.D.Colo.1985); In re Fresh Approach, Inc., 51 B.R. 412, 417-18 (Bankr.N.D.Tex.1985); In re Richmond Children’s Center Inc., 49 B.R. 262, 264-68 (Bankr. S.D.N.Y.1985), rev'd on other grounds, Yonkers Bd. of Educ. v. Richmond Children’s Center, Inc., 58 B.R. 980 (S.D.N.Y.1986).

. The bankrupt estate is to include "all legal and equitable interests of the debtor in property ...” 11 U.S.C. 541(a)(1).

. The Eastern District of Virginia has, and had at the time of the orders in question in this case, an automatic order of reference for cases related to or arising under title 11 pursuant to 28 U.S.C. § 157(a). Order of Reference, No. 20 (E.D.Va. July 13, 1984).