In re Petition of Alison J. TRECO and David Patrick Hamilton, as Liquidators of Meridien International Bank Limited (In Liquidation), Debtor in Foreign Proceedings.

No. 96 Civ. 3170 (SS).
Bankruptcy No. 95 B 44326 (JLG).

United States District Court,
S.D. New York.

Feb. 10, 1997.

Otterbourg, Steindler, Houston & Rosen, P.C., Kurt J. Wolff, (Daniel Wallen, of counsel), New York City, for Appellants, The Bank of New York and JCPL Leasing Corp.

Stroock & Stroock & Lavan, Melvin A. Brosterman (David Bolton, of counsel), New York City, for the Liquidators of Meridien International Bank.

## MEMORANDUM AND ORDER
SOTOMAYOR, District Judge.

Appellants, The Bank of New York and JCPL Leasing Corp. (collectively the "Bank"), appeal from an order signed by the Bankruptcy Court on March 12, 1996 (the "Modified Order"). For the reasons to be discussed, the Modified Order is affirmed.

## BACKGROUND
On December 8, 1995, the Bankruptcy Court, by the Hon. James L. Garrity Jr., entered a Preliminary Injunction Order (the

"Order") enjoining the commencement or continuation of any proceeding against the debtor Meridien International Bank Limited ("MIBL"):

> except for the action styled as *The Bank of New York et ano v. Meridien BIAO Bank Tanzania Limited, et al.,* 95 Civ. 4856 (SS) and any claims, counterclaims, cross-claims or third-party claims asserted or to be asserted in such action (collectively the *"Bank of New York* Action"); *provided, however, that as against MIBL the Bank of New York Action may be prosecuted only to determine whether and to what extent any of the assets at issue in such action are property of MIBL's Estate;* ...

(Temporary Restraining Order, Designation No. 30; E.O.D. No. 25 at 2) (emphasis added).

Thereafter, the parties advised this Court in the *Bank of New York* action that a dispute existed between the parties concerning the scope of the Order which MIBL was moving to modify. The Court determined that because the issue concerned the scope of the Order, the matter was better adjudicated by Judge Garrity.

On March 12, 1996, the Bankruptcy Court signed a modification of its Initial Order (the "Modified Order"). By retracting the "provided, however" clause from the initial order, the Modified Order enjoined all proceedings, including the *Bank of New York* action, as to MIBL. The Modified Order was premised on the following findings of fact and conclusions of law set forth on the record by the Bankruptcy Court on March 7, 1996:

> I have had an opportunity to consider all the arguments that were made on the record, as well as to review the papers, filed both in support of the motion as well as in opposition to the motion.
>
> I have determined that with due respect to those who have objected that I am going to modify the injunction to the extent requested by the Liquidators.
>
> Now, the reason I am doing that is because I believe, number one, as I had determined I believe there is cause under Section 304, as I have already indicated, 304 to issue the injunction. Those facts have not changed.
>
> Moreover, I persuaded that given the litigation in the District Court, that if we hold on to the—or I should say enjoin any action, any action against the Debtors and thus in the first instance consider the issue of whether—what is the extent of the Debtor's interest in the various assets that we are going to be in a position, one, to do it faster, but second, our efforts in that regard may help to alleviate potential conflict and confusion in the District Court.
>
> Moreover, from the perspective of the estate we've got everyone, the litigation can go forward here. I know there was discussion with respect to the need to make the determination, as Koreag tells us, as to what is property of the estate.
>
> I certainly don't read Koreag as saying we can't do it. I believe we do have the jurisdiction to make that determination in the first instance and from that the parties will have their rights.
>
> Finally, I believe that in an effort to what I think will streamline and simplify the resolution of the issue at least, in the first instance, I think if it starts here we are going to lend, one, some assistance to what is happening in the District Court from the perspective of taking at least one issue out of that litigation and being in a position to deal with it quickly.
>
> Second, given the varied interest or alleged interest in the assets, for example, the spare plane parts The Bank of New York's claim of approximately $200,000 against those parts, now that's something that can be dealt with quickly.
>
> Then you've got the other parties making claims to the proceeds. We may be in a better position to facilitate resolution, consensual resolution, of some of the competing claims if the matter is retained in this Court.
>
> For all of those reasons, I find that the injunction should be modified to the extent requested by the movants and I respectfully overrule the objections to the request.

(3/7/96 Hearing Tr. at 5–7).

Appellant filed this appeal arguing, *inter alia,* that the Bankruptcy Court erred as a matter of law by (1) granting an injunction in

the Modified Order that was broader than necessary to protect the debtor's assets; (2) failing to make specific findings of fact and conclusions of law as required by Fed. R.Civ.P. 52 and as applied to the Bankruptcy Court by Fed.R.Bankr.P. 7052 and 1018; (3) arrogating to itself a non-core determination of what property belongs to MIBL, thereby resulting in judicial waste and inefficiency; (4) not applying judicial estoppel to MIBL's motion; and (5) failing to recognize that an interpleader action in the district court is not subject to an automatic stay. MIBL opposes the appeal.

### DISCUSSION

MIBL does not contest that BNY can appeal the Modified Order as a matter of right. *See* 28 U.S.C. § 158(a). I agree with BNY that the Modified Order does not merely clarify the initial Order but substantially enlarges the scope of the initial injunction. Therefore, the Bankruptcy Judge's findings of fact should be reviewed for clear error and its legal conclusions reviewed de novo. *See National Union Fire Ins. Co. of Pittsburgh v. Bonnanzio,* 91 F.3d 296, 300 (2d Cir.1996) ("The fact findings of the bankruptcy court are reviewed by the district court for clear error and the conclusions of law are reviewed de novo.") (citing Fed.R.Bankr.P. 8013).

### I. The Modified Order as Overly Broad

█ Appellants do not challenge the Bankruptcy Court's conclusion that under 11 U.S.C. § 304, an injunction to protect the estate was warranted. Instead, appellants argue, essentially, that the injunction issued was broader than necessary to protect the interests of the estate. Appellants argue that it would not injure the estate for the District Court merely to decide who holds title to property while the Bankruptcy Court subsequently enforces any judgment rendered by the District Court. Appellants' argument rests on some fundamental misperceptions of the proceedings and relevant case law, however.

First, the district court interpleader action does not fundamentally implicate title to a res. There are three claims for relief in the district court action. The first does not involve MIBL at all and is not affected by the Modified Order. It seeks a declaratory judgment that BNY was entitled to enforce the terms of a Pledge Agreement between itself and defendant Meridien BIAO BANK Tanzania Limited ("Meridien Tanzania"). Meridien Bank's Pledge Agreement secured a $15,150,000 loan to MIBL, upon which MIBL defaulted. Appellants used Meridien Tanzania's pledged accounts to satisfy MIBL's debt and appellants seek a judgment that they acted properly under the Pledge Agreement. In its submission, BNY concedes that the only way in which MIBL is implicated in the first claim is "[i]f BNY were to succeed on this claim against Meridien Tanzania, the interests of BNY in the property interpleaded *in the Second and Third Claims for Relief* would be substantially reduced and Meridien Tanzania's cross-claim with respect to the interpleaded assets would be increased." (Appellant Mem. at 5) (emphasis added).

The second claim for relief involves entitlement to the proceeds of the sale of certain airplanes and spare parts in the possession of appellants. Appellants claim that "JCPL possesses title to the aircraft" and that "BNY has the immediate right to the first proceeds of sale to satisfy outstanding obligations under the aircraft financing arrangements." (Appellant Mem. at 5–6). Conditioned upon their losing the declaratory action against Meridien Tanzania in the first claim, appellants also assert an interest in MIBL's rights to the proceeds from the sale of parts. They claim that "to the extent that BNY is unsuccessful on its First Claim of Relief, BNY will be entitled to all or a portion of the additional sale proceeds based, among other things, on the doctrine of constructive trust, BNY's right of setoff, and contractual rights under security agreements [with Meridien Tanzania] in favor of BNY." (Appellant Mem. at 6). To the extent the other defendants in this case claim they have an entitlement superior to BNY to the proceeds at issue, those claimants are not appealing the Modified Order, and, as such, those claims can and will be heard in the Bankruptcy Court. Similarly, to the extent MIBL claims rights to those proceeds, it is satisfied to have the Bankruptcy Court hear those claims.

In its third claim for relief, appellants interplead various accounts, some of which they hold in the name of MIBL. There is no dispute that the accounts are in MIBL's name. Rather, appellants maintain that "accounts in the name of MIBL are subject to a constructive trust in favor of BNY or that BNY is entitled to the funds in those accounts pursuant to contractual rights under security agreements and BNY's right of setoff...." (Appellant Mem. at 6). In essence, appellants argue that a constructive trust should be imposed over these accounts in appellants' favor in order to ensure that appellants are paid if Meridien Tanzania prevails and MIBL's debt to it revives.

Thus, stripped to their essentials, the bulk of appellants' claims do not, as they maintain, arise from any dispute with MIBL over the title to a res. Instead, they arise from the claim of an entitlement, under constructive theories, to be paid from the debtor's estate.

I concur fully with the Bankruptcy Court that *In re Koreag,* 961 F.2d 341 (2d Cir.), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992), in no way determined that a bankruptcy court could not determine a party's entitlement to a constructive trust over a portion of the debtor's estate. The two-part test enunciated in *Koreag* simply requires *a* court—district or bankruptcy— first to decide whether a trust exists and second to distribute the property. *Koreag* describes the test in ownership terms: "It logically follows that before a particular property may be turned over pursuant to § 304(b)(2), a Bankruptcy Court should apply local law to determine whether the debtor has a valid ownership in that property which the issue is properly posed by an adverse claimant." *Id.* at 349. From this language of ownership, appellants argue that the Second Circuit has characterized the constructive trust theory as a title of res issue.

Appellants, however, read too much into *Koreag.* The Second Circuit was not addressing in *Koreag* whether issues of constructive trusts were core or non-core. Instead, the Court assumed the bankruptcy court had jurisdiction and simply addressed what analytical process the bankruptcy court had to follow before ordering a turnover of

assets under Section 304. In short, as Judge Garrity observed, *Koreag* tells us *what* has to be determined, not *who* determines it.

Thus, because the district court action significantly implicates issues affecting estate assets properly before the Bankruptcy Court, and because I agree with the Bankruptcy Court that it is more efficient for the Bankruptcy Court to address these issues initially, I conclude that the modified Order is not overbroad. (*See also* Sections III, IV, V, *infra.*)

## II. Failure to Make Specific Findings of Fact and Conclusions of Law

■ I further reject appellants' arguments that the Bankruptcy Court's findings of fact and conclusions of law violate Fed.R.Civ.P. 52(a). *See* Fed.R.Civ.P. 52(a) (requiring that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action."). In determining whether to issue the initial temporary restraining order and in deciding whether to modify that injunction on MIBL's motion, the Bankruptcy Court held at least four hearings and received and reviewed a plethora of submissions from the parties. (*See* Transcripts of Hearings on October 3, 1995; November 1, 1995; December 8, 1995; and February 7 and 28, of 1996.) Although brief, the Bankruptcy Court's findings of fact and conclusions of law are adequate to apprise the Court for purposes of review of the essential findings and conclusions of the Bankruptcy Court. *See Inverness Corp. v. Whitehall Laboratories,* 819 F.2d 48, 50 (2d Cir.1987) (per curiam) (providing that the two purposes of Rule 52(a) are to "aid[ ] 'the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court'" and to "encourage[ ] the trial judge to ascertain the facts with due care and to render a decision in accord with the evidence and the law.") (citations omitted); *Tekkno Labs., Inc. v. Perales,* 933 F.2d 1093, 1097 (2d Cir.1991) ("Although we may proceed with our review despite inadequate findings if we 'can discern enough solid facts from the record to enable [us] to render a decision, we will normally vacate the order if

the findings and the record are not sufficient to enable us to be sure of the basis of the decision below.") (citations and internal quotations omitted); *New York State Dep't of Taxation & Finance v. Hackeling,* 917 F.2d 713 (2d Cir.1990) (same); *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 902 F.2d 1085, 1088–1089 (2d Cir.1990) (remanding with instructions to find facts " 'specially' in accordance with Rule 52(a)" where district court merely made blanket conclusions of law without supporting findings of fact); *Fengler v. Numismatic Americana, Inc.,* 832 F.2d 745, 748 (2d Cir.1987) (vacating preliminary injunction and remanding case where district court "made no factual findings to justify its grant of injunctive relief."). *Cf.* Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, . . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court. . . ."). The Bankruptcy Court's findings of fact and conclusions of law, in addition to the "solid facts from the record" below, fully enable this Court to "be sure of the basis of the decision below." *Tekkno Labs., Inc. v. Perales,* 933 F.2d 1093, 1097 (2d Cir.1991). For this reason, I find that the Bankruptcy Court did not violate Fed. R.Civ.P. 52(a) in granting the modified injunction.

## III. Arrogation of a Non–Core Determination

"The determination whether a case is a core proceeding or a non-core matter related to a case under title 11 is made by the bankruptcy judge." *Federal Ins. Co. v. Sheldon,* 167 B.R. 15, 21 n. 5 (S.D.N.Y.1994); *see also* 28 U.S.C. § 157(b)(3) (providing that "[t]he bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."); *Hassett v. BancOhio National Bank,* 172 B.R. 748 (S.D.N.Y.1994) (recognizing that "some courts have construed [the language of 28 U.S.C. § 157(b)(3) ] as establishing a preference for initial determination of the issue by the bankruptcy court"). *But cf. Kentile Floors, Inc. v. Congoleum Corp.,*

1995 WL 479512 (S.D.N.Y.1995) (discussing precedent regarding whether district court or bankruptcy court should make initial determination whether matter is core or non-core).

Clearly, the Bankruptcy Court's decision to enjoin the proceedings in the district court and address itself first to the issues presented by appellants was a determination that the district court action implicated core proceedings. I do not find this conclusion to be incorrect. Adopting the reasoning of the Fourth Circuit in *Canal Corp. v. Finnman,* 960 F.2d 396, 401–03 (4th Cir. 1992), I also conclude that a constructive trust theory of recovery can be viewed as a claim against an estate—a matter within the core jurisdiction of the Bankruptcy Court. As the Court explained:

> Clearly, the only proper forum for determining whether assets held by a debtor are held in constructive trust is the bankruptcy court, and such proceedings should be considered core proceedings. A determination of the proper beneficiaries of that trust is inextricably tied to the finding of a constructive trust. Distribution of the trust to the proper beneficiaries necessarily is predicated upon a determination of who those beneficiaries are. The finding of a constructive trust by the bankruptcy court and a determination of the proper distribution of that trust are intimately tied to the traditional bankruptcy functions and estate, and, therefore, are core matters within the clear jurisdiction of the Bankruptcy Court.

*Id.* at 402. In light of this precedent, and for the same reasons I did not find the modified order overly broad, I conclude that the Bankruptcy Court has not arrogated to itself a non-core proceeding. However, to the extent that the Modified Order will result in the Bankruptcy Court resolving some issues not central to its jurisdiction, I will accept its findings of fact and conclusions of law as a report and recommendation and review them de novo at the time they are issued. *See International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Eastern Air Lines, Inc.,* 121 B.R. 428, 432 (S.D.N.Y.1990)

("If the matter is determined to be a non-core proceeding the bankruptcy court may hear the matter even absent the consent of the parties, but may only issue a report to the district court."), *aff'd* 923 F.2d 26 (2d Cir.1991); *In re Wefco, Inc.,* 97 B.R. 749, 751 (E.D.N.Y.1989) (providing that "a district court has the power to refer non-core related actions to the bankruptcy court for the purpose of issuing reports and recommendations as to the proper disposition of the matter").

## IV. Judicial Estoppel

■ "The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding ... judicial estoppel protects the sanctity of the oath and the integrity of the judicial process." *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). I agree with appellees that judicial estoppel does not bar the Modified Order.

It appears at least arguable that appellees did not support the limited injunction initially entered to the extent that it included the "carve out" provision allowing the district court action against MIBL to continue on the limited issue of determining MIBL's assets. (*See* 12/8/95 Tr. at 55–56 (counsel for MIBL explaining that it would be more efficient to have the determination of the trust issue resolved by the Bankruptcy Court and "that's why we argued at the outset that there should be a complete injunction"); *id.* ("I still think it [a complete injunction] is an appropriate way to go"); *id.* at 58–59).[1] Nevertheless, even if MIBL had accepted the initial Order, circumstances changed between the issuance of the initial Order and the Modified Order. When appellants sought to amend their complaint in the district court to add a constructive trust theory, the full implications of the conflict between the Bankruptcy Court's jurisdiction and that of the District Court, as well as the inherent ambi-

guity in the scope of the Order, became self-evident. As appellees explain:

> Following entry of the [initial] Order, Appellants ... seized on the fact that actions concerning MIBL were proceeding in two separate courts ... attempting to enlarge the scope of the "carve out" to the injunction contained in the [initial] Order. In correspondence exchanged among counsel and the courts (and during conferences) BNY continually sought to enlarge the carve out provided for in the [initial] Order, thus potentially destroying the protection provided to MIBL by the Order.

(Appellee Mem. at 2). "Simply put," appellees aptly point out, "the meaning and scope of the Order were constant issues." (*Id.* at 8). Therefore, because MIBL's position arguably remained unchanged and because circumstances changed which precipitated a reconsideration of the initial order, I do not find that appellees should have been judicially estopped from asserting their claim to modify the initial order. As they aptly argue in their opposition papers, "[w]hile the doctrine of judicial estoppel may bar a party from inappropriately changing its position, it certainly does not bar a party from protecting its interests in the face of changed circumstances." (Appellee Mem. at 20).

■ In any event, the Bankruptcy Court's decision clearly affirms that it had reconsidered its initial decision and decided that the confusion regarding the boundaries of responsibility between the two Courts with respect to MIBL warranted the modification sought. Hence, this serves as an independent basis for the modification of the Order—upon the Bankruptcy Court's own initiative rather than MIBL's motion.

## V. Automatic Stay for Interpleader

■ Finally, I disagree with appellants that the authority of the Bankruptcy Court to enjoin other proceedings under Section 304 is in any way limited by the interpretation other courts have given to the contours of the automatic stay provisions of the Bank-

---

1. To the extent that appellants argue that MIBL did not object to the entry of the initial order and that "it was MIBL's own form of Order that was entered by the Bankruptcy Court," (Appellant Reply at 3), I find that MIBL's conduct most likely reflects their assessment that the "provided, however" clause of the initial order was a *fait accompli.*

ruptcy Code. (*See* Appellee Mem. at 26 (citing *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1305 (8th Cir.1977); *Price & Pierce Int'l Inc. v. Spicers Int'l Paper Sales, Inc.*, 50 B.R. 25, 26 (S.D.N.Y.1985); *National Co–op Refinery Ass'n v. Rouse*, 60 B.R. 857, 860 (D.Colo.1986); *Justus v. Financial News Network*, 158 B.R. 570, 573 (S.D.N.Y.1993).)). "A bankruptcy court is given broad latitude in fashioning an appropriate remedy in a § 304 proceeding." *Koreag*, 961 F.2d at 348. In reading the transcript of the hearing on the Modified Order, it was clear that the Bankruptcy Court was not determining that it had jurisdiction to hear all of the issues implicated in the district court action. Instead, as its findings of fact make clear, it was simply determining that to protect the estate, it could more expeditiously and with less burden on the estate, address the issues implicated by the action. I concur with the Bankruptcy Court's assessment that the district court action involves many discrete issues which do not affect MIBL and for which MIBL's presence and participation in the action would necessarily deplete the estate.

As noted, the Court does not perceive the Bankruptcy Court as having decided that all issues in the district court action are subject to its adjudication. However, like the Hon. Haight in *Hassett v. BancOhio Nat'l Bank*, 172 B.R. 748 (S.D.N.Y.1994), I concur that an initial review of the issues involved in this matter are best undertaken by the Bankruptcy Court and that even for those the Bankruptcy Court could not adjudicate finally, its report and recommendation would assist the Court. *See* 28 U.S.C. § 157(c)(1); *In re Houbigant, Inc. v. ACB Mercantile, Inc.*, 185 B.R. 680, 684 (S.D.N.Y.1995) (referring matter to bankruptcy court for report and recommendation); *International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Eastern Air Lines, Inc.*, 121 B.R. 428, 432 (S.D.N.Y.1990) ("If the matter is determined to be a non-core proceeding the bankruptcy court may hear the matter even absent the consent of the parties, but may only issue a report to the district court."), *aff'd*, 923 F.2d 26 (2d Cir.1991); *In re Wefco, Inc.*, 97 B.R. 749, 751 (E.D.N.Y.1989) (providing that "a district court has the power to refer non-core related actions to the bankruptcy court for the purpose of issuing reports and recommendations as to the proper disposition of the matter"). As the Court in *Wefco* explained, "[t]he classification of a proceeding as core or non-core does not determine the jurisdiction of a bankruptcy court, but instead relates to a determination of whether that court may enter a final order or judgment or whether it may only issue findings of fact and conclusions of law upon which the district court enters a final order after de novo review." *In re Wefco, Inc.*, 97 B.R. 749, 751 (E.D.N.Y.1989). I find the Bankruptcy Court's initial review of these matters would be helpful to the Court.

### CONCLUSION

For the reasons discussed, the Court affirms the Bankruptcy Court's Modified Order.

**SO ORDERED.**