In re Petition of Alison J. TRECO and David Patrick Hamilton, as Liquidators of Meridien International Bank Limited (In Liquidation), Debtor in Foreign Proceedings.

JCPL LEASING CORP. and The Bank of New York, Plaintiffs,

v.

Alison J. TRECO and David Patrick Hamilton, as Liquidators of Meridien International Bank Limited (In Liquidation), Meridien International Bank Limited; J.S. Ward and N. Allen as Joint Liquidators of Zambia Airways Corporation Limited (In Liquidation), Zambia Airways Corporation Limited; Alain Rukavina, as Receiver of ITM International S.A. (In Liquidation); ITM International S.A.; and Meridien Aviation S.A.Z.F., Defendants.

Bankruptcy No. 95 B 44326(JLG).
Adversary No. 98/9182A.

United States Bankruptcy Court,
S.D. New York.

Dec. 1, 1998.

344

Otterbourg, Steindler, Houston & Rosen, New York City, for the Bank of New York and JCPL Leasing Corp.

Stroock & Stroock & Lavan LLP, New York City, for Petitioners Alison J. Treco and David Hamilton.

Nixon, Hargrave, Devans & Doyle, New York City, for Alain Rukavina, as Receiver of ITM International S.A.

Schulte, Roth & Zabel LLP, New York City, for the Joint Liquidators of Zambia Airways Corporation Limited (In Liquidation).

Anderson Kill & Olick, P.C., New York City, for the Deposit Insurance Board, as assignee of Meridien BIAO Bank Tanzania Limited.

### *MEMORANDUM DECISION ON MOTION FOR LEAVE TO SERVE COMPLAINT AND PROSECUTE ACTION AND FOR ORDER CONSOLIDATING DISCOVERY, AND CROSS–MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

By order dated March 14, 1996, we enjoined the Bank of New York ("BNY") and JCPL Leasing Corp. ("JCPL") (collectively, the "plaintiffs") from commencing or continuing any judicial, administrative or regulatory action against Meridien International Bank Limited (in Liquidation) ("MIBL") in the United States. In doing so, we limited their rights to proceed in an action pending in the United States District Court for the Southern District of New York entitled *The Bank of New York v. Meridien BIAO Bank Tanza-*

*nia Limited,* 95 Civ. 4856 (S.D.N.Y.) (the "BNY Action"). They move by order to show cause for authorization to serve the summons and complaint (the "Adversary Complaint") in this adversary proceeding on MIBL and Alison J. Treco and David Patrick Hamilton, as MIBL's liquidators (the "MIBL Liquidators"), and to prosecute the action against them and the other named defendants. They also ask us to direct that all discovery heretofore taken in the BNY Action and in this ancillary proceeding can be used by any party as discovery in this Adversary Proceeding.

In concept, and with certain procedural safeguards, no defendant objects to BNY's request respecting the discovery. Nonetheless, they urge us to deny the motion, contending, among other things, that we lack subject matter jurisdiction to adjudicate some or all of the claims plaintiffs are asserting in the Adversary Complaint, and because plaintiffs can and should assert those claims in the BNY Action. Additionally, Alain Rukavina, as Receiver of ITM International, S.A. (In Liquidation) (the "ITM Receiver") and on behalf of ITM International S.A. ("ITM") and Meridien Aviation S.A.Z.F. ("Meridien Aviation"), seeks an order pursuant to Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(1) dismissing the Adversary Complaint for lack of subject matter jurisdiction. BNY opposes that motion.

### Facts

The relevant facts are not in dispute. In 1988, Irving Trust Company ("Irving Trust"), as BNY's predecessor in interest, financed Meridien Aviation's acquisition of two ATR passenger aircraft (the "Aircraft") and spare parts. Meridien Aviation simultaneously leased the Aircraft and spare parts to Zambia Airways. MIBL is an affiliate of Meridien Aviation, and it guaranteed Meridien Aviation's obligations to Irving Trust. As security for that guaranty, MIBL pledged a cash collateral account at Irving Trust.

On or about October 5, 1993, BNY declared Zambia Airways in default under the leases and served notices terminating them. In March 1994, plaintiffs commenced an action against Zambia Airways in the United Kingdom seeking possession of the Aircraft and spare parts and payment of sums due under the leases. They obtained possession of the Aircraft, but not the spare parts, on November 4, 1994.

On or about June 28, 1995, plaintiffs commenced the BNY Action against MIBL, Meridien Aviation, ITM, the Bank of Tanzania and Zambia Airways, among others. In the first and second causes of action, BNY seeks judgments that as between itself and the Bank of Tanzania, it is entitled to retain, in satisfaction of indebtedness to it, $15,150,000 in a bank account maintained at BNY. The third and fourth claims for relief are in the nature of interpleader pursuant to Fed. R.Civ.P. 22 and for declaratory judgments regarding, respectively, the Aircraft and certain bank accounts, some of which BNY holds in MIBL's name.

On August 30, 1995, plaintiffs moved the District Court in the BNY Action for an order permitting them to sell the Aircraft. On September 29, 1995, the District Court granted the motion and entered an order (the "September 29 Order") stating, in part, that

> plaintiffs The Bank of New York and JCPL Leasing Corp., be, and they hereby are, permitted to conduct sales of the property which is the subject of said plaintiffs' Second Claim for Relief provided, however, that nothing hereinabove or hereinafter set forth shall preclude any defendant on plaintiffs' Second Claim for Relief from asserting before this court that the manner and terms of any sale or sales was commercially unreasonable, unless such defendant consented to the manner and terms of any sale or sales.

September 29 Order, pp. 3–4.

MIBL is a debtor in a liquidation proceeding pending in the Bahamas and the MIBL Liquidators are its court-appointed liquidators. On September 29, 1995, the liquidators commenced this ancillary proceeding pursuant to § 304 of the Bankruptcy Code seeking, among other things, injunctive relief, including a stay of prosecution of claims in the BNY Action against MIBL.

On March 14, 1996, we entered a Modified Order of Injunction (the "March 14 Order")

in MIBL's § 304 proceeding which, among other things, prohibits the commencement or continuation of any action against MIBL. Plaintiffs appealed that order and the District Court affirmed it. *See In re Petition of Treco,* 205 B.R. 358 (S.D.N.Y.1997).

On or about August 8, 1996, J.S. Ward and N. Allen, as liquidators of Zambia Airways (the "ZAC Liquidators") filed a § 304 petition on behalf of Zambia Airways. By means of that petition, they sought to enjoin the continuation of the BNY Action and MIBL's § 304 proceeding as against property in which ZAC asserted an interest, including the Aircraft. The ZAC Liquidators also sought a temporary restraining order enjoining all parties from taking any action with respect to Zambia Airways' property in the United States in furtherance of the enforcement of any claim against Zambia Airways.

On April 1, 1997, the ITM Receiver commenced an ancillary proceeding under § 304 of the Bankruptcy Code on behalf of ITM. On April 3, 1997, he filed an Order to Show Cause seeking entry of a preliminary injunction, among other things, enjoining all persons and entities from commencing or continuing any judicial, administrative or regulatory action against ITM or its property in the United States (including as against Meridien Aviation or its property), or the proceeds of any such property. BNY opposed the motion. We heard argument on the motion on April 15, 1997 and denied it on April 25, 1997. ITM timely appealed our determination and on or about May 16, 1997, the District Court remanded the matter to us for further findings of fact and conclusions of law on the § 304 application. The parties then engaged in protracted, but unsuccessful negotiations in an effort to resolve their many disputes. In July 1998, the ITM Receiver advised us that Meridien Aviation disclaimed any entitlement to a § 304 injunction and agreed to withdraw his request herein for that relief. On remand, we granted ITM's motion. *See Petition of Rukavina,* 227 B.R. 234, 243–44 (Bankr. S.D.N.Y.1998) (memorandum decision on petitioner's motion for a preliminary injunction) pp. 25–26.

Plaintiffs commenced this adversary proceeding on September 25, 1998. The Adversary Complaint contains three claims for relief. Generally, plaintiffs maintain that the defendants have continually second-guessed their efforts to sell the Aircraft and have threatened them with litigation based upon claims that they are not acting, and have not acted in a commercially reasonable manner regarding the Aircraft. Thus, in their First Claim for Relief, plaintiffs seek a declaratory judgment against all defendants

> that disposition of the Aircraft by public auction is a commercially reasonable disposition of collateral under Article 9 of the Uniform Commercial Code and any applicable law; (b) that [they] have at all times acted in a commercially reasonable manner with respect to the Aircraft; and (c) that any claim by the Defendants, and each of them [including Meridien Aviation], that [they] failed to act in a commercially reasonable manner be rejected.

Adversary Complaint ¶ 75. Plaintiffs desire to distribute the proceeds of the Aircraft and spare parts after they sell them. Thus, in the Second Claim for Relief, they seek an order, regarding all defendants, in the nature of an interpleader,

> (a) determining that [they] and Defendants are or may be adverse claimants to the proceeds of sale that may be made available by sale of the Aircraft and spare parts; (b) providing that the Court orders such Defendants who claim a right to the proceed of such sale to interplead and establish their respective claims; (c) determining that upon determination of the foregoing claims, that [they] be discharged from any other or further liability to such Defendants; (d) providing that the Court determine which of the parties herein, if any, is entitled to receive the surplus proceeds of sale, if any, after satisfaction of all debt due to [them], or if no Defendant is entitled to the full amount of surplus, that the Court determine the proportionate share to which each is entitled; and (e) ordering a permanent injunction against all parties from instituting any proceedings in any court or tribunal, federal, state or foreign, against [them] for recovery of all or any part of the Aircraft or spare parts proceeds.

*Id.* ¶ 85. Plaintiffs direct the Third Claim for Relief solely to Zambia Airways. They contend that it's answer to the complaint in the BNY Action asserts counterclaims relating to the Aircraft and that Zambia Airways has advised them that it has other claims against BNY for fraud, fraudulent misrepresentation, fraudulent concealment, fraudulent inducement, aiding and abetting fraud, conversion, aiding and abetting conversion, breach of contract, negligence, commercially unreasonable disposition of collateral (breach of good faith), constructive trust, and breach of covenant of good faith and fair dealing. Plaintiffs deny any liability to Zambia Airways and in the Third Claim for Relief seek a judgment pursuant to 28 U.S.C. § 2201 declaring that "any and all claims [of Zambia Airways] against [them] are without merit and must be dismissed in their entirety." *Id.* ¶ 92.

Plaintiffs have not served MIBL or the MIBL Liquidators with a summons or the Adversary Complaint. They correctly contend that the March 14 Order prevents them from doing so. Accordingly, in this motion, they seek an order permitting them to serve the summons and Adversary Complaint upon, and prosecute this action against, MIBL and the MIBL Liquidators. They also maintain that it would be wasteful to duplicate, in this Adversary Proceeding, the discovery that the parties have conducted in this ancillary proceeding and the BNY Action. Accordingly, they also seek an order

> [d]irecting that all discovery heretofore taken in [the BNY Action] and in [this ancillary case], including, but not limited to depositions, document productions, answers to interrogatories and requests for admissions, be deemed, and can be used by any party, as discovery in this Adversary Proceeding.

MIBL and the MIBL Liquidators (sometimes collectively referred to herein as "MIBL") contend that we lack subject matter jurisdiction of the First Claim for Relief and that the District Court should hear it in the context of the BNY Action. Although MIBL does not dispute that we can adjudicate the Second Claim, it contends that because plaintiffs are already seeking relief in

the nature of an interpleader in the BNY Action, they should proceed on both claims in that action. Thus, MIBL contends that we should deny the motion, modify the March 14 Order and direct plaintiffs to proceed on these claims in the BNY Action. Alternatively, it contends that under § 305 of the Bankruptcy Code, we should abstain from hearing this Adversary Proceeding.

Plaintiffs have served the ITM Receiver, ITM and Meridien Aviation with copies of the summons and Adversary Complaint. On behalf of those defendants, the ITM Receiver argues that we lack subject matter jurisdiction of the First and Second Claims for Relief, and objects to plaintiffs' motion on that basis. Additionally, he has moved pursuant to Fed.R.Bank.P. 7012 and Fed.R.Civ.P. 12(b)(1) for an order dismissing the Adversary Proceeding for lack of subject matter jurisdiction. Finally, plaintiffs have served Zambia Airways and the ZAC Liquidators with copies of the summons and Adversary Complaint, although they have extended their time to answer or otherwise move respecting the complaint. The ZAC Liquidators and Zambia Airways argue that in the context of this § 304 proceeding we lack the power to adjudicate the First and Third Claims. They also contend that in the September 29 Order, the District Court directed that all complaints relating to BNY's efforts to sell the Aircraft be brought in the first instance in that court, that BNY should adhere to that order, and that, at best, BNY's claim of commercial reasonableness and counterclaims are non-core matters that only the District Court can finally resolve. Thus, they argue that we should deny plaintiffs' motion and direct them to withdraw the Adversary Proceeding and file it in the District Court.

### Discussion

Plaintiffs contend that we should overrule all objections, grant their motion and deny the ITM Receiver's motion to dismiss the Adversary Complaint. The arguments that the parties have made in connection with the motions overlap, and we will address them together. At issue here is the extent of our subject matter jurisdiction under § 304 of the Bankruptcy Code.

■ Plaintiffs deny that the September 29 Order directs that complaints relating to BNY's sales efforts be brought in the District Court. Moreover, citing *Petition of Treco*, 205 B.R. 358, they argue that the District Court has ruled that we should decide all issues relating to the Aircraft, including, without limitation, whether plaintiffs have acted in a commercially reasonable manner respecting the disposition of the Aircraft, in the context of this § 304 proceeding. They contend that pursuant to the "law of the case" doctrine, we are bound by that determination. We recognize that "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation[.]" *In re PCH Associates*, 949 F.2d 585, 592 (2d Cir.1991) (citations omitted). However, we disagree that application of that doctrine mandates that we grant plaintiffs' relief herein. In relevant part, in our March 14 Order, we enjoined plaintiffs from

> transferring, relinquishing or disposing of [MIBL's] property, or the proceeds of such property, to any persons or entity other than [the MIBL Liquidators], except as provided for in the order entered by [the District Court] on September 21, 1995 in [the BNY Action].

March 14 Order, p. 2. As noted, the September 29 Order permits plaintiffs to sell the Aircraft and spare parts and to hold the proceeds thereof in an interest bearing escrow account. As relevant here, by staying plaintiffs from proceeding in the BNY Action against MIBL, we determined that after plaintiffs sell the Aircraft, we will fix MIBL's interest in the proceeds, if any, in the context of this § 304 proceeding. Contrary to BNY's assertions, in affirming that order, the District court did not determine that, in the first instance, we will resolve all disputes regard-

ing the Aircraft. Rather, it focused solely on matters relating to the parties' interests in MIBL's property. In determining that our order was not over broad, the Court held that "because the [BNY Action] significantly implicates issues affecting estate assets properly before the Bankruptcy Court, and because I agree with the Bankruptcy Court that it is more efficient for the Bankruptcy Court to address those issues initially, I conclude that the [March 14 Order] is not over broad." *Petition of Treco*, 205 B.R. at 362. BNY also misplaces its reliance of the District Court's discussion of the scope of our core jurisdiction. *See id.* at 362–63. That discussion was germane to BNY's assertion that in determining MIBL's interest in certain bank accounts at BNY, we could not address BNY's argument that we should impress those accounts with a constructive trust.

■ Plaintiffs make much of the fact that MIBL conducted discovery in this ancillary case regarding their efforts to market the Aircraft, that no party objected to that discovery and that all defendants participated in it. Even so, and as we explain below, that action cannot vest us with subject matter jurisdiction.

28 U.S.C. §§ 1334(b) and 157(a) fix the scope of our subject matter jurisdiction.[1] They do not make special provision for, or otherwise except, § 304 proceedings, and, accordingly, plaintiffs contend that the First and Third Claims are "related to" this § 304 proceeding because their resolution could conceivably affect the size of the foreign debtors' estates. *See In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). We have jurisdiction of MIBL's § 304 proceeding under 28 U.S.C. § 1334(b) and § 304 of the Bankruptcy Code. *See, e.g., In re Hackett*, 184 B.R. 656, 657 n. 1 (Bankr.

---

**1.** Section 1334(b) states:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). Section 157(a) states:

Each district court may provide that any or all cases under title 11 and any or all pro-

ceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a). In this district, § 1334(b) was implemented by the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

S.D.N.Y.1995). However, in equating the scope of our jurisdiction in this ancillary case with that in a bankruptcy case under title 11, plaintiffs overlook the limited nature of a § 304 proceeding.

The filing of a § 304 petition "does not create a bankruptcy 'estate' that must be 'administered' by the court." *Sturge v. Smouha (In re Smouha),* 136 B.R. 921, 929 (S.D.N.Y.), *appeal dismissed,* 979 F.2d 845 (2d Cir.1992); *see also Koreag v. Refco F/X Associates, Inc. (In re Koreag Controle et Revision S.A.),* 961 F.2d 341, 348–349 (2d Cir.) (the reference in § 304 to "such estate" is to the foreign estate), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992). There is no automatic stay upon the filing of a § 304 petition and the foreign debtor does not receive a discharge upon the completion of the § 304 proceeding. *In re Goerg,* 844 F.2d 1562, 1568 (11th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989). Indeed, most of the provisions of Chapters 3, 5, 7, and 11 do not automatically apply to an ancillary proceeding, *see In re Rubin,* 160 B.R. 269, 275 n. 3 (Bankr.S.D.N.Y.1993), and a foreign debtor can qualify for relief under § 304 even if it could not be a "debtor" under the Bankruptcy Code. *See, e.g., In re Goerg,* 844 F.2d at 1568; *In re Brierley,* 145 B.R. 151, 158–59 (Bankr.S.D.N.Y.1992); *In re Lines,* 81 B.R. 267, 269 (Bankr.S.D.N.Y.1988).

■■■ An ancillary case is not a full-fledged bankruptcy case. *See In re Koreag,* 961 F.2d at 358 (a § 304 proceeding "is not a bankruptcy that implicates the full range of procedural and substantive provisions applicable to domestic bankruptcies."); *In re Brierley,* 145 B.R. at 160 (a § 304 petition "does not commence a full scale bankruptcy case") (citing legislative history); *In re Lines,* 81 B.R. at 271 ("An ancillary proceeding under § 304 is not a Chapter 7 proceeding or a Chapter 11 proceeding; nor is it a full scale bankruptcy proceeding."). Rather, it is a limited proceeding "designed to function in aid of a proceeding pending in a foreign court." *Universal Casualty & Surety Co. Ltd. v. Gee (In re Gee),* 53 B.R. 891, 898 (Bankr.S.D.N.Y.1985). It follows that our jurisdiction under § 304 cannot be as broad

as that in a case under title 11. Sections 304(b) and (c) limit the relief that a foreign representative can obtain in an ancillary case. "Indeed, the section 304 debtor may ultimately receive no relief at all; it is within the discretion of the bankruptcy court guided by the factors enumerated in section 304(c) to determine what relief, if any, is appropriate." *In re Goerg,* 844 F.2d at 1568. Under § 304(b), in aid of a foreign proceeding, a court can

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

11 U.S.C. § 304(b).

■■■ Plaintiffs contend that the First and Third Claims seek "other appropriate relief" under § 304(b)(3). In enacting that section, Congress "recognized the bankruptcy courts' need for considerable flexibility in confronting the multitude of complex and unforeseen problems that are associated with international bankruptcy cases." *In re Gee,* 53 B.R. at 896–897. While we have "broad latitude in fashioning an appropriate remedy in a § 304 proceeding", *In re Koreag,* 961 F.2d at 347 (citations omitted), that discretion is necessarily limited: "[i]n aid of [foreign] proceedings, federal bankruptcy courts may, within the constraints imposed by section 304, apply their processes and expertise to marshal property of the foreign debtor's estate in this country." *In re Goerg,* 844 F.2d at 1567. Thus, to the extent that the action preserves, protects or recovers property of the foreign debtor, we have jurisdiction under § 304 to adjudicate it. By contrast, claims that are unrelated to

the preservation or recovery of property in aid of a foreign proceeding are outside the ambit of our limited § 304 jurisdictional mandate. *Cf. Dry Clime Lamp Corp. v. Edwards,* 389 F.2d 590, 595–98 (5th Cir. 1968) (court's in rem jurisdiction generally limited to claims directly related to the res upon which jurisdiction is predicated). The cases BNY cites support our conclusion. In each, the court granted the petitioner relief under § 304(b)(3) where the remedy he sought directly or indirectly affected the foreign debtor's property in the United States. In *Angulo v. Kedzep Limited,* 29 B.R. 417 (S.D.Tex.1983), and *In re Gee,* 53 B.R. 891, the courts authorized foreign representatives to maintain § 304 proceedings in order to conduct discovery regarding claims asserted against the foreign debtor and the existence and location of assets of the foreign debtor in the United States, respectively. *In re Metzeler,* 78 B.R. 674, 680 (Bankr.S.D.N.Y. 1987), *In re Comstat Consulting Services, Ltd.,* 10 B.R. 134 (Bankr.S.D.Fla.1981), and *In re Egeria Societa Per Azioni di Navigazione,* 26 B.R. 494 (Bankr.E.D.Va.1983), involved efforts by foreign representatives to recover assets for the foreign estate because the courts permitted the foreign representatives to bring avoidance actions under the Bankruptcy Code to recover alleged preferential payments and repatriate the funds to the foreign court.[2] Those cases are inapposite because the First and Third Claims do not seek to recover property or otherwise implicate the foreign debtors' assets in this country. Rather, they are in the nature of tort or contract claims arising out of plaintiffs' alleged mishandling of the Aircraft. *In re Kojima,* 177 B.R. 696 (Bankr.D.Colo. 1995), is also distinguishable. In that case, the court authorized a foreign representative appointed in a Japanese insolvency proceeding involving a Japanese company that owned and operated golf courses to enjoin the enforcement of a tax lien against property located in Colorado, conduct discovery, sue to recover allegedly preferential or fraudulent transfers and seek a declaratory judgment as to the relative rights, title and interest in the real property. *Id.* at 699. In authorizing the declaratory judgment action, the court stated as follows:

> This Court determines that, at least, a colorable claim for a fraudulent transfer, an unauthorized post-petition transfer, or an otherwise improper and avoidable transfer, has been shown by a preponderance of the evidence, under either Japanese bankruptcy law or Colorado state law, and that the dispute should be resolved by a court in the United States. Section 304(c)(3), for example, can encompass not just actions to prevent future conveyances, but also actions to recover property for a bankruptcy estate.

*Id.* at 703 (footnotes and citation omitted). We read the Second Claim for Relief to replead the matter that the District Court already referred to us—that is, we must determine the extent of MIBL's interest in the proceeds of the Aircraft when and if BNY sells them. Whether BNY has acted in the past or will in the future act in a commercially reasonable manner as to the Aircraft will not affect our determination of the manner in which to allocate their proceeds. The clear nexus between the disposition of the debtor's property and the declaratory relief that the foreign representative obtained in *Kojima* is missing here. We disagree with plaintiffs that we can adjudicate the First and/or Third Claims for Relief under § 304(b)(3) of the Bankruptcy Code.

As an alternative argument, defendants contend that all of the matters raised in the Adversary Complaint fall within our non-core jurisdiction, and that as such, we cannot conduct the jury trials they say they are entitled to under applicable law. Plaintiffs maintain that the Adversary Complaint falls within our core jurisdiction and that, in any event, no defendant has a right to a jury trial. Given our determination that we lack jurisdiction to adjudicate the First and Third Claims for Relief, we need not address those contentions.

Likewise, the ZAC Liquidators and Zambia Airways contend that the portion of the

---

**2.** Not all courts agree that in a § 304 case, bankruptcy courts can utilize the avoiding powers under the Bankruptcy Code. *See, e.g., In re A.*

*Tarricone, Inc.,* 80 B.R. 21, 23 (Bankr.S.D.N.Y. 1987).

September 29 Order that we quoted above vests the District Court with exclusive jurisdiction to adjudicate claims regarding the sale or sales of the Aircraft. Plaintiffs interpret that language to mean that the defendants can challenge the commercial reasonableness of the sales in the District Court, but that they are not precluded from seeking relief in any other appropriate forum. Given our determination as to our subject matter jurisdiction, we need not address that issue.

Plaintiffs also argue that this is the appropriate forum for adjudicating the issues in the Adversary Complaint because MIBL selected it by commencing its ancillary case. However, as relevant herein, the only issues MIBL raised in its application for the preliminary injunction and the modification thereof relate to the turnover of the Aircraft proceeds. In any event, MIBL cannot, by waiver or consent, confer subject matter jurisdiction on this court. *See* Fed.R.Civ.P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *Endicott Johnson Corp. v. Liberty Mutual Insurance Co.*, 116 F.3d 53, 56 (2d Cir.1997) ("If a court lacks subject matter jurisdiction, that defect is not cured by a purported agreement between or among the parties that a case may be heard in that court").

Finally, plaintiffs contend that defendants are judicially estopped from arguing that we lack subject matter jurisdiction of the Adversary Complaint because in successfully arguing for the March 14 Order both in this court and on appeal in the District Court, they contended that it would be more efficient and cost effective if all actions relating to the Aircraft, including any non-core issues, were heard in this Court. "The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a legal proceeding ... judicial estoppel protects the sanctity of the oath and the integrity of the judicial process." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). That doctrine is inapplicable because

defendants did not previously argue and we did not find that this is the appropriate forum for determining the issues raised in the First and Third Claims for Relief. Because we find that we lack subject matter jurisdiction of the First and Third Claims for Relief, we deny plaintiffs' request for leave to serve the Adversary Complaint on MIBL and the MIBL Liquidators.

Under Fed.R.Civ.P. 12(b)(1), we must dismiss a complaint where we lack jurisdiction over its subject matter. We grant ITM and the ITM Receiver judgment dismissing the First Claim for Relief for lack of subject matter jurisdiction. Plaintiffs deny that the ITM Receiver can act on Meridien Aviation's behalf. The receiver contends that he can so act because ITM owns at least 90% of Meridien Aviation. We will not resolve that dispute. Still, we dismiss the First Claim as to Meridien Aviation because we lack subject matter jurisdiction to adjudicate it. *See* Fed. R.Civ.P. 12(h)(3). We deny ITM's motion regarding the Second Claim for Relief. Still, we dismiss the claim because, as we have already noted, it repleads the matter that the District Court already referred to us, and because we have determined that we will determine the respective interests of ITM and MIBL, if any, in the Aircraft proceeds in the context of the § 304 proceedings.

As noted, Zambia Airways has not answered the Adversary Complaint. Given our determination that we lack subject matter jurisdiction over the First and Third Claims, and to foster judicial economy herein, we dismiss the Adversary Complaint as to the ZAC Liquidators and Zambia Airways.

### Conclusion

We deny plaintiffs' motion. We grant the ITM Receiver's motion in part and deny it in part. Nonetheless, we dismiss the Second Claim for Relief. We dismiss the complaint as to Zambia Airways.

SETTLE ORDER.