In re **PARMALAT FINANZIARIA S.p.A., et al., Debtors.**

**Grant Thornton International, Movant,**

v.

**Parmalat Finanziaria S.p.A., Respondent.**

**Bank of America, N.A., Movant,**

v.

**Parmalat Finanziaria S.p.A., Respondent.**

Nos. 04 MD 1653(LAK), 04 Civ. 8569(LAK), 04 Civ. 8611(LAK).

United States District Court, S.D. New York.

Jan. 26, 2005.

Brian M. Cogan, James L. Bernard, Claude G. Szyfer, Danielle Alfonzo Walsman, Heidi Balk, Stroock & Stroock & Lavan LLP, Dana L. Post, Thomas McC. Souther, Joseph B. Tompkins, Jr., A. Robert Pietrzak, Alan C. Geolot, Mark P. Guerrera, Sidley Austin Brown & Wood LLP, for Movants.

Marcia L. Goldstein, Howard B. Comet, Scott E. Cohen, Weil, Gotshal & Manges LLP, for Parmalat Finanziaria S.p.A.

## MEMORANDUM OPINION

KAPLAN, District Judge.

These motions require the Court to consider the procedural interaction of a set of foreign and domestic proceedings all arising out of the historic collapse of Parmalat Finanziaria S.p.A. and affiliated entities, which began in December 2003.

Parmalat Finanziaria S.p.A., Parmalat S.p.A, and twenty-one affiliates and subsidiaries (together, "Parmalat" or the "Foreign Debtors"), all foreign corporations, are currently in reorganization proceedings in Parma, Italy.[1] Last June, Dr.

1. Joint Report on the Status of Proceedings in Italy, Jan. 18, 2005, filed as docket item 47 in

Enrico Bondi, the Foreign Debtors' "Extraordinary Administrator,"[2] commenced a proceeding in the Bankruptcy Court for the Southern District of New York under Section 304 of the Bankruptcy Code[3] seeking a stay of all proceedings against the Foreign Debtors (the "Section 304 Proceeding"). The Bankruptcy Court granted the requested relief in the form of a preliminary injunction.

Grant Thornton International ("GTI") and Bank of America, N.A. ("BoA") (together, the "Movants") now move for an order partially withdrawing the reference of the Section 304 Proceeding to the Bankruptcy Court and modifying the Bankruptcy Court's preliminary injunction order to allow the Movants to assert counterclaims and third-party claims against, and take discovery of, the Foreign Debtors.

*Facts*

### A. Parmalat Litigation

Understanding the issues raised by these motions requires some familiarity with the various lawsuits pending in the United States in connection with the Parmalat scandal. In addition to the Section 304 Proceeding, there are two sets of private civil actions.[4]

First, investors have brought actions alleging securities fraud against Parmalat's directors, accountants, banks, and lawyers. These have been consolidated before the undersigned into one proceeding (the "Securities Fraud Action") that purports to be a class action and is captioned *In re Parmalat Securities Litigation.*

Second, Dr. Bondi has brought three actions in his own name against banks and accounting firms (the "Recovery Actions") alleging, among other things, that the defendants conducted audits and structured transactions in ways that defrauded Parmalat and its investors. The first, against Citigroup, Inc. and affiliates, was filed in New Jersey state court, removed, and remanded. That case will not be considered in this opinion. The second, against GTI, Deloitte & Touche LLP, and affiliates, was commenced in Illinois and now is before the undersigned.[5] The third, against BoA and affiliates, was commenced in the U.S. District Court for the Western District of North Carolina. A motion before the Judicial Panel on Multidistrict Litigation to transfer that action to the undersigned is pending.

All of the federal actions are at the stage of pre-answer motions to dismiss. The Court has allowed written discovery by the plaintiffs to proceed in the Recovery Action brought against the accounting firms.

### B. The Section 304 Proceeding

Section 304 authorizes a bankruptcy court to "enjoin the commencement or continuation of ... any action against ... a debtor with respect to property involved in" a foreign bankruptcy proceeding.[6] The order Judge Drain issued on July 2, 2004 and extended on August 26, 2004 (the "Section 304 Order") among other things

---

04 MD 1653 ("Joint Report"); *see also* pet. in supp. of the commencement of the Section 304 Proceeding, June 22, 2004 ("Pet.").

2. The position of Extraordinary Administrator in Italy apparently is analogous to that of a trustee in bankruptcy in the United States. Dr. Bondi was appointed by the government of Italy. Joint Report at 1.

3. 11 U.S.C. § 304 (2004).

4. There is also the Chapter 11 reorganization of U.S. subsidiaries of Parmalat, but those proceedings are not relevant to this motion.

5. A motion to remand that action is under consideration.

6. 11 U.S.C. § 304(b).

enjoins creditors of the Foreign Debtors from:

> "seeking discovery of any nature against the Foreign Debtors or any of their subsidiaries or affiliates" [7]

and from:

> "commencing or continuing any act or action or legal proceeding . . ., including by way of counterclaim, to create, perfect or enforce any lien, setoff, garnishment, attachment or other claim against the Foreign Debtors, any of their subsidiaries or affiliates, or the proceeds thereof. . . ." [8]

## C. The Desired Relief and the Foreign Debtors' Response

The Movants began with the proposition that the Section 304 Order prevented them from defending themselves in the Securities Fraud Action and the Recovery Actions. The order appeared to bar the Movants from, among other things, asserting compulsory counterclaims in the Recovery Actions, that is, from asserting counterclaims that arise out of the alleged facts on which the Recovery Actions are based.[9] The Movants ask this Court to withdraw the reference of the Section 304 Proceeding to the extent necessary for this Court to modify the Section 304 Order to permit the Movants (a) to assert counterclaims, both mandatory and permissive, in the Recovery Actions, (b) to conduct discovery against Parmalat in the Recovery Actions and the Securities Fraud Action, and (c) to implead the Foreign Debtors in the Securities Fraud Action.

The Movants argue that Section 304 should be used only defensively, not as a tactic in offensive litigation such as the Recovery Actions. They contend that Dr. Bondi, by bringing three Recovery Actions in three different fora, has defeated one of the purposes of Section 304, which is to centralize litigation. Finally, they argue that judicial economy will be promoted if this Court presides over their counterclaims and discovery requests in the Securities Fraud Action and the Recovery Actions.

The Foreign Debtors respond that the Movants' arguments are largely moot because the Foreign Debtors are willing to agree to a modification of the Section 304 Order that would permit compulsory counterclaims and discovery in the Recovery

---

7. Cogan Decl. Ex. D. ¶ 3(a).

8. *Id.* ¶ 3(d).

9. Judge Drain's order by its terms applies to "[a]ll the creditors of [the Foreign Debtors], as defined in the 304 Petition." *Id.* ¶ 3. The petition commencing the Section 304 Proceeding does not define "creditor" explicitly, but it requests an order enjoining "all creditors of the Foreign Debtors subject to the Italian Plan [of Reorganization] (the 'Italian Plan Creditors')." Pet. ¶ 27(c). BoA clearly fits within this category because it alleges that Parmalat has failed to repay loans made by BoA, and it apparently has made a claim in the Italian reorganization proceedings. BoA Br. 3, 13; Tr., Jan. 14, 2005 ("Tr."), at 20–23; 38–39. GTI, by contrast, has not alleged that it had any claim against Parmalat at the time Parmalat entered bankruptcy, let alone that GTI is subject to the Italian reorganization proceedings.

At argument, GTI's counsel stated, and the Foreign Debtors' counsel did not dispute, that (1) the term "creditor" in Judge Drain's order should be defined exactly as in the Bankruptcy Code, and (2) that definition includes a party with a contingent or unmatured claim. Tr. at 9. The Court is not convinced that GTI's counsel stated the appropriate interpretation of "creditor" for purposes of Judge Drain's order or that any claim GTI might have in the future against Parmalat necessarily makes GTI a "creditor" within the meaning of the Bankruptcy Code, *see* 11 U.S.C. § 101(10). Without deciding whether GTI's counsel was correct on either point, the Court assumes that Judge Drain's order applies to GTI because no party has disputed it.

Actions. According to the Foreign Debtors, their concessions leave as the only significant points of dispute whether the Movants should be permitted to assert permissive counterclaims in the Recovery Actions, and to implead the Foreign Debtors in the Securities Fraud Action. The Foreign Debtors argue that the assertion of permissive counterclaims and third-party claims would interfere with the restructuring process underway in Italy and therefore would undercut the policies of Section 304. In addition, they argue that any discussion of third-party claims against, and discovery of, the Foreign Debtors in the Securities Fraud Action is premature.[10]

In response to the Foreign Debtors' point that the right to assert compulsory counterclaims is not in dispute, the Movants contend that the parties are likely to dispute whether a counterclaim is permissive or mandatory and that the Movants must be permitted to assert both permissive and mandatory counterclaims.

## Discussion

### A. Withdrawal of the Reference

■ A district court "may withdraw, in whole or in part, any case or proceeding [referred to a bankruptcy court], on its own motion or on timely motion of any party, for cause shown."[11] The statute does not define "cause," but "the Second Circuit has noted that factors relevant to the determination include 'whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'"[12] While the question whether the proceeding sought to be withdrawn is core or non-core is significant,[13] it is not dispositive.[14] A core proceeding (the Section 304 Proceeding is conceded to be core) may be withdrawn "based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest."[15]

■ In this case, there is a higher interest, and that is an overriding consideration of judicial efficiency. The undersigned has been charged by the Judicial Panel on Multidistrict Litigation with the orderly administration of the pretrial proceedings in the Securities Fraud Action and the Recovery Actions that are subject to federal jurisdiction. That is a unique responsibility, and questions regarding the applicability of the Section 304 Order to discovery

---

10. The Foreign Debtors have noted, however, that "to the extent the Movants may eventually need any discovery from the Foreign Debtors for purposes of the [Securities Fraud Action], the Foreign Debtors are prepared to coordinate discovery in the Recovery Actions and the [Securities Fraud Action]." Resp. Br. 14 n. 7.

11. 28 U.S.C. § 157(d) (2004).

12. *1800Postcards, Inc. v. Morel*, 153 F.Supp.2d 359, 366 (S.D.N.Y.2001) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir.1993)); *accord South Street Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996).

13. *See Orion Pictures Corp.*, 4 F.3d at 1101.

14. *E.g., Official Comm. of Unsecured Creditors of Enron Corp. v. Lay (In re Enron Corp.)*, 295 B.R. 21, 26 (S.D.N.Y.2003); *LTV Steel Co. v. City of Buffalo (In re Chateaugay Corp.)*, No. 00 Civ. 9429(SHS), 2002 WL 484950, at *6 (S.D.N.Y.2002); *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y.1998); *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 185 B.R. 680, 686 (S.D.N.Y.1995).

15. *Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41, 43 (S.D.N.Y. 1993) (internal quotation marks and citation omitted).

and counterclaims in those actions bear directly upon it. To direct such questions to the Bankruptcy Court in the first instance would be inefficient and counterproductive.

The Foreign Debtors do not dispute this. They argue instead that the present dispute is moot to the extent that the Movants seek to assert compulsory counterclaims and conduct discovery in the Recovery Actions. That argument, however, goes to the merits of the question whether and to what extent the Section 304 Order should be modified, not to whether, as a threshold matter, the reference should be withdrawn. The Foreign Debtors argue also that the Bankruptcy Court "is familiar with the need to tailor its order to protect the legitimate interests of both the Foreign Debtors and other parties in interest." [16] In this case, however, familiarity with that need is not enough. This Court, after all, also is familiar with that need.

The Court will withdraw the reference to allow it to consider the applicability of any Section 304 Order to parties to the Securities Fraud Action and the Recovery Actions.

*B. Modification of the Section 304 Order*

■ As of this writing, motions to dismiss the complaints in the Securities Fraud Action and at least one of the Recovery Actions have not been fully briefed. A motion to remand is pending in one of the Recovery Actions. The Court has declined to disturb the stay of discovery applicable to the plaintiffs in the Securities Fraud Action by virtue of the Private Securities Litigation Reform Act. Accordingly, the question whether the order should be modified to permit the Movants to as-

sert counterclaims and third-party claims against the Foreign Debtors in the Securities Fraud Action or the Recovery Actions is premature. It will be ripe if and to the extent the plaintiffs survive motions to dismiss. The same is true of the question whether the order should be modified to permit the Movants to take discovery of the Foreign Debtors in the Securities Fraud Action.

The question whether the Movants should be allowed to take discovery of the Foreign Debtors in the Recovery Actions is not premature, but the Foreign Debtors do not object to a modification of the Section 304 Order that would permit such discovery. The Court therefore will modify the Section 304 Order accordingly.

These foregoing conclusions suffice to decide this motion. Nevertheless, the Court pauses to identify issues that were not substantially addressed in the briefs but that, with the benefit of oral argument and reflection, the Court believes are likely to be pertinent to the disposition of any renewed application to modify the Section 304 Order to permit the assertion of counterclaims or third-party claims against the Foreign Debtors.

■ Section 304 was enacted in 1978 "to deal with the complex and increasingly important problems involving the legal effect the United States courts will give to foreign bankruptcy proceedings." [17] The statute provides that a court, in determining whether to grant Section 304 relief, "shall be guided by what will best assure an economical and expeditious administration of [the foreign] estate, consistent

---

16. Resp. Br. 12.

17. *Cunard Steamship Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 454 (2d Cir.1985); *accord*

*Bank of New York v. Treco (In re Treco),* 240 F.3d 148, 153 (2d Cir.2001).

with" six factors.[18] Those most relevant here appear to be "comity," "just treatment of all holders of claims against or interests in [the foreign] estate," and "distribution of proceeds of [the foreign] estate substantially in accordance with the order prescribed by" the Bankruptcy Code.[19]

Any renewed application for modification of the Section 304 Order to permit the assertion of claims, then, would appear to involve at least three questions. First, are the rights sought to be enforced through the claims sought to be asserted different from the rights that the parties would enjoy under Italian law?[20] Second, if there is a difference between Italian and United States law, should the Court give effect to Italian or United States law? The former presumably would entail preserving the Section 304 Order so as to defer to the proceedings in Parma, whereas the latter might well require the Court to modify the Section 304 Order. Finally, in which direction does the statutory consideration of "just treatment of all holders of claims against or interests in" the foreign estate push?

### Conclusion

Insofar as the motions seek to withdraw partially the reference of the Section 304 Proceeding to the Bankruptcy Court, they are granted to the extent that the reference is withdrawn with respect to, and this Court will exercise exclusive jurisdiction over, whether to grant, vacate, modify, make permanent or otherwise continue, construe and enforce any order in the Section 304 Proceeding (including the Section 304 Order) to the extent that such order affects the Securities Fraud Action or any Recovery Action pending in a federal court.

Insofar as the motions seek to modify the Section 304 Order, the Section 304 Order is modified to permit the Movants to take discovery of the Foreign Debtors in the Recovery Actions pending in federal court. In all other respects the Section 304 Order shall remain in effect.

The motions [04 Civ. 8569, docket item 1; 04 Civ. 8611, docket item 1] are denied in all other respects.

The Clerk shall docket this opinion on the master docket for the multidistrict Parmalat litigation (04 MD 1653) in addition to the dockets for 04 Civ. 8569 and 04 Civ. 8611.

SO ORDERED.

---

18. 11 U.S.C. § 304(c).

19. *See id.*

20. *See* Tr. at 34, 40.