Enrico BONDI, Plaintiff,

v.

**GRANT THORNTON INTERNATIONAL,**
et al., Defendants.

No. 04 Civ. 9771(LAK).

United States District Court,
S.D. New York.

Feb. 25, 2005.

John B. Quinn, Marc L. Greenwald, Loren Kieve, Michael B. Carlinsky, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York City, John R. McCambridge, Gary M. Miller, Grippo & Elden LLC, Chicago, IL, for Plaintiff.

Richard A. Martin, Kevin J. Toner, Patryk J. Chudy, Douglas M. Schwab, Heller Ehrman White & McAuliffe, LLP, New York City, Stephen R. Patton, John F. Hartmann, Michael A. Duffy, Kirkland & Ellis, LLP, Chicago, IL, for Defendant Deloitte & Touche S.p.A.

Brian M. Cogan, James L. Bernard, Claude G. Szyfer, Danielle Alfonzo Walsman, Stroock & Stroock & Lavan LLP, New York City, for Defendant Grant Thornton International.

Bruce R. Braun, Linda T. Coberly, Margaret Maxwell Zagel, Ronald P. Gould, Winston & Strawn LLP, Chicago, IL, for Defendant Grant Thornton LLP.

Robert W. Tarun, Janet Malloy Link, Miles N. Ruthberg, Peter W. Devereaux, Latham & Watkins LLP, Chicago, IL, for Defendant Deloitte Touche Tohmatsu.

Alan N. Salpeter, Michele Odorizzi, Mayer, Brown, Rowe & Maw LLP, Chicago, IL, for Defendants Deloitte & Touche USA LLP and Deloitte & Touche LLP.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action was filed in Illinois state court, removed to federal court, and transferred here by the Judicial Panel on Multidistrict Litigation. The plaintiff has moved to remand the action. This motion, like those in a related case that were disposed of in an earlier opinion of this Court,[1] requires the Court to consider the procedural interaction of a set of foreign and domestic proceedings arising out of the collapse of Parmalat Finanziaria S.p.A., Parmalat S.p.A., and affiliated entities (collectively, "Parmalat").

*Facts*

### A. Overview of Parmalat Litigation

Parmalat is an international dairy conglomerate based in Italy. Its financial collapse began in December 2003 and generated a number of legal proceedings. The Court will review those relevant here.

Twenty-three foreign Parmalat corporations (the "Foreign Debtors") are in reorganization proceedings in Parma, Italy.[2] Dr. Enrico Bondi serves by appointment of the Italian government as the Foreign Debtors' Extraordinary Commissioner,[3] a position apparently analogous to that of a trustee in bankruptcy in the United

---

1. *Grant Thornton Int'l v. Parmalat Finanziaria S.p.A. (In re Parmalat Finanziaria S.p.A.)*, 320 B.R. 46 (S.D.N.Y.2005).

2. *Id.* at 47.

3. The parties have sometimes translated the title as Extraordinary Administrator.

States.[4] In addition, three U.S. subsidiaries of Parmalat (the "U.S. Debtors")[5] are in Chapter 11 reorganization proceedings in the United States (the "U.S. Bankruptcies").

Last June, Dr. Bondi commenced a proceeding in the Bankruptcy Court for the Southern District of New York under Section 304 of the Bankruptcy Code[6] (the "Section 304 Proceeding") seeking a stay of all proceedings against the Foreign Debtors, which the Bankruptcy Court granted.[7]

Dr. Bondi brought as well in his own name three actions against banks and accounting firms (the "Recovery Actions") alleging, among other things, that the defendants conducted audits and structured transactions in ways that defrauded Parmalat and its investors. The first, against Citigroup, Inc. and affiliates, was filed in New Jersey state court, removed, and remanded. The second, against Grant Thornton International, Deloitte & Touche S.p.A., and affiliated accounting firms, is the present action.[8] The third, against Bank of America, N.A. and affiliates, was commenced in the U.S. District Court for the Western District of North Carolina. A motion before the Judicial Panel on Multi-district Litigation to transfer that action to this Court is pending.

Finally, investors have brought class actions alleging securities fraud against Parmalat's directors, banks, lawyers, and accountants, including all of the defendants in the present action. These actions have been consolidated before the undersigned (the "Securities Fraud Action") under the caption *In re Parmalat Securities Litigation*.

### B. Procedural Background

This action was filed in the Circuit Court of Cook County, Illinois. The defendants removed it to the U.S. District Court for the Northern District of Illinois on the basis of Sections 1334(b) and 1452 of Title 28 of the United States Code.

Section 1334(b) is a jurisdiction-conferring statute. It provides:

"Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." (emphasis added)

---

4. *See id.;* Joint Report on the Status of Proceedings in Italy, Jan. 18, 2005 [04 MD 1653, docket item 47].

5. The entities are Parmalat USA Corp., Farmland Dairies LLC, and Milk Products of Alabama LLC.

6. 11 U.S.C. § 304 (2004).

7. *Grant Thornton Int'l*, 320 B.R. at 47.
 In its earlier opinion, this Court withdrew the reference of that proceeding in order to exercise jurisdiction over the granting or modification of any order that affects other Parmalat cases pending in a federal court. *See id.* at 48–49.

8. The defendants in this action are Grant Thornton International, Grant Thornton LLP, Grant Thornton S.p.A., Deloitte & Touche S.p.A., Deloitte Touche Tohmatsu, Deloitte & Touche USA LLP, and Deloitte & Touche LLP. The complaint named also Grant Thornton S.p.A., now known as Italaudit S.p.A., but that defendant has not appeared before this Court, and it is unclear whether the plaintiff still is proceeding against it. The complaint asserts claims for professional malpractice, fraud, aiding and abetting fraud and constructive fraud, negligent misrepresentation, aiding and abetting breach of fiduciary duty, theft and diversion of corporate assets, conversion, unjust enrichment, aiding and abetting fraudulent transfer, deepening insolvency, and unlawful civil conspiracy.

The defendants asserted that the present action is related to the Section 304 Proceeding and the U.S. Bankruptcies.

Section 1452 governs removal and remand in the bankruptcy context. It provides in relevant part:

"(a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

"(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

The plaintiff moved to remand. After briefing was complete, the Judicial Panel on Multidistrict Litigation transferred this action here pursuant to Section 1407 of Title 28. This Court heard oral argument on the remand motion, and the parties supplemented their briefing.

*Discussion*

### A. "Related-to" Jurisdiction Pursuant to Section 1334

The major issue is whether this case is "related to" any "cases under Title 11" within the meaning of Section 1334. If it is not, this Court lacks jurisdiction.

■ The test for whether a civil proceeding is "related to" a bankruptcy case is not controversial. It is:

"whether [the action's] outcome might have any 'conceivable effect' on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction. . . ." [9]

■ The parties do not dispute that the outcome of this action might have a conceivable effect on the Foreign Debtors' estates by adding to their assets.[10] Rather, the parties disagree as to whether the Section 304 Proceeding is a "case under Title 11" and whether it creates an estate for purposes of related-to jurisdiction.

The Court begins with the text of the Bankruptcy Code. The Code does not de-

---

**9.** *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir.1992) (citations omitted).

In their initial briefs, the parties cited the Seventh Circuit's test from *In re FedPak Sys., Inc.*, 80 F.3d 207, 213–14 (7th Cir. 1996): "[A] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e. the debtor's estate] or the allocation of property among creditors.'" (citations and internal quotation marks omitted)

Most Circuits use the test stated in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984):

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." (citations omitted)

*See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (observing that eight Circuits besides the Third have adopted the *Pacor* test and that the Second Circuit's and Seventh Circuit's tests are "slightly different").

**10.** The plaintiff argues that adding to the assets in an estate does not amount to affecting that estate for purposes of the test for related-to jurisdiction. Pl. Supp. Mem. 3. The Court rejects the argument because it flies in the face of the case law defining the related-to jurisdiction, as well as what appears to be the plaintiff's own premises in earlier briefs for this motion.

fine "case," but Section 101(42) defines "petition" as a "petition filed under section 301, 302, 303, or *304* of this title, as the case may be, *commencing a case under this title.*" [11] In other words, the text of the Code unambiguously states that a proceeding under Section 304 is a "case" under Title 11.

Section 304 itself employs similar terminology. The section is headed "*Cases ancillary to foreign proceedings*" and begins: "(a) A *case* ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative." [12]

The plaintiff's citations of legislative history and decisions of bankruptcy courts to the effect that a proceeding under Section 304 is different from a full-fledged bankruptcy case under chapters 7, 9, 11, 12, and 13 are beside the point. The fact that the bankruptcy court's powers and responsibilities in a Section 304 proceeding are much more limited than in a Chapter 11 proceeding does not change the fact that the text of the Bankruptcy Code makes a Section 304 proceeding a "case."

The plaintiff next argues that a Section 304 proceeding creates no estate to which a state law action may be "related." The plaintiff's textual arguments and citations to case law to the effect that "[Section] 304 does not create an estate" [13] again are beside the point. The defendants do not dispute that the estate at issue in a Section 304 proceeding is that administered by the foreign court. [14] But a foreign estate may have assets located in the United States or otherwise subject to the jurisdiction of United States courts, and it is undisputed that the purpose of any Section 304 proceeding, including that commenced by Dr. Bondi, is to allow United States courts to assert control over such assets.

There is no reason why a state law action designed to recover some of those assets—an action that could have been brought in the Section 304 Proceeding [15]— and thus increase the size of the estate involved in the Section 304 case is not "related to" the Section 304 Proceeding within the meaning of Section 1334. Ultimately the plaintiff cites no authority for his assertion that "to meet the 'related to' test, the affected estate must be the estate in the U.S. bankruptcy proceeding which provides the 'hook' for federal jurisdiction." [16]

Indeed, the plaintiff's position is inconsistent with the policies of Section 304. The statute was enacted in 1978 "to deal with the complex and increasingly important problems involving the legal effect the United States courts will give to foreign bankruptcy proceedings." [17] Among other things, the statute "aims to economize and expedite the orderly and equitable distribution of the foreign estate ... and not proliferate litigation between the foreign representatives and persons in the United States." [18] Thus, the statute provides that

---

11. 11 U.S.C. § 101(42) (emphasis added).

12. 11 U.S.C. § 304 (emphasis added).

13. Pl. Supp. Mem. 2.

14. *See* Tr., Dec. 23, 2004 [04 MD 1653, docket item 11], at 63 ("Tr."); Def. Supp. Mem. 2.

15. *See, e.g., JCPL Leasing Corp. v. Treco (In re Treco)*, 227 B.R. 343, 349–50 (Bankr.S.D.N.Y. 1998).

16. Pl. Supp. Mem. 2.

17. *Cunard Steamship Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 454 (2d Cir.1985); *accord Bank of New York v. Treco (In re Treco)*, 240 F.3d 148, 153 (2d Cir.2001).

18. *Evans v. Hancock, Rothert & Bunshoft (In re Evans)*, 177 B.R. 193, 197 (Bankr.S.D.N.Y. 1995) (internal citations omitted).

a court, in determining whether to grant relief, "shall be guided by what will best assure an economical and expeditious administration of [the foreign] estate." [19] Dr. Bondi's Recovery Actions, if they proceeded separately in courts across the country, would "proliferate litigation" and conflict with these policies.

The plaintiff argues that the policies of bankruptcy are only to centralize claims *against* a debtor, not claims on *behalf of* a debtor. The Court is not convinced. As discussed earlier, Section 1334 and the case law construing it confer jurisdiction on the federal courts over matters that could increase, as well as decrease, the size of a bankrupt estate.

This Court thus has jurisdiction pursuant to Section 1334. [20]

## B. Abstention

■ The plaintiff has attempted to support its remand motion by arguing that the Court should abstain pursuant to Sec-

tion 1334(c)(2) or (c)(1). [21] The plaintiff's motion, however, was to remand, not for abstention. A motion to abstain is a prerequisite to a decision to abstain under Section 1334(c)(2). [22] Furthermore, since the briefing and argument on this motion, the Second Circuit issued *Mt. McKinley Insurance Co. v. Corning Inc.*, [23] which addresses abstention under Section 1334(c)(2). The implications of that decision and its applicability to this case have not been briefed or argued.

Nonetheless, even if the motion to remand were construed as a motion to abstain and remand, and even if *Mt. McKinley Insurance Co.* means that Section 1334(c)(2) applies to the present case, the Court would deny the motion to abstain.

■ It is well-settled that:

"[a] party seeking mandatory abstention must prove each of the following: (1) the motion to abstain was timely; (2) the action is based on a state law claim;

19. 11 U.S.C. § 304(c).

20. The defendants argue as well that this Court has jurisdiction because the present action is "related to" one of the U.S. Bankruptcies in that any recovery in this case will affect the estate of one of the U.S. Debtors, Farmland Dairies LLC, through claims it has filed in the reorganization proceedings in Parma. In light of the preceding conclusions, the Court finds it unnecessary to address this question.

21. Those sections provide:
"(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
"(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have

been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if·an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334 (2004).

22. Abstention and remand are not the same. For instance, mere abstention does not mean a lack of subject matter jurisdiction, *see S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 708 (2d Cir.1995), whereas a remand terminates subject matter jurisdiction, *see Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*, 318 F.3d 392, 401 (2d Cir.2003). Furthermore, a decision not to abstain under § 1334(c)(2) is reviewable on appeal, whereas a denial of a motion to remand under § 1452(b) is not. *See* 28 U.S.C. §§ 1334(d), 1452(b); *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 445–46 (2d Cir.2005).

23. 399 F.3d 436 (2d Cir.2005).

(3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be 'timely adjudicated' in state court." [24]

 In this case, the plaintiff has failed to show that this action can be "timely adjudicated" in the state court. The plaintiff has presented statistics tending to show that in recent years, the average time from filing to date of trial in the Cook County courts was only longer than the comparable period in the Northern District of Illinois by a matter of months. These statistics, however, do not tell the whole story.

The Parmalat scandal has spawned a transnational bankruptcy and a number of securities fraud class actions in this country. This Court has jurisdiction over the latter and withdrew the reference of so much of the former as was necessary to facilitate the orderly administration of pretrial proceedings in all Parmalat actions pending in federal courts. Many of the allegations in the present action are similar to those in the Securities Fraud Action, and there is no real dispute that many of the same discovery issues are likely to arise in both. Indeed, although the plaintiffs in the Securities Fraud Action are, at the moment, prohibited from taking discovery pursuant to the Private Securities Litigation Reform Act,[25] this Court already has determined that the plaintiffs in the Securities Fraud Action should be heard

regarding any objections the defendants in this action might make to discovery requests by Dr. Bondi.[26] This action, in other words, is but one piece of a much larger, extremely complex litigation puzzle.

In other complex bankruptcy-*cum*-securities fraud multidistrict litigations, judges in this district have found that remand to a state court would not promote timely adjudication. Judge Lynch's observations are directly applicable here:

"[Section] 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although 'related to' a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court. Far from promoting 'timely adjudicat[ion]' of plaintiffs' claims, to remand here would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court." [27]

Judge Cote's conclusions in a comparable case also are apt:

"The size of the WorldCom bankruptcy, the close connections between the defendants in this action and the debtor, and the complexity of this litigation suggest [that] remanding to state court could

---

**24.** *New York City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.),* 293 B.R. 308, 331 (S.D.N.Y.2003); *accord In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 341 F.Supp.2d 386, 411–412 (S.D.N.Y.2004); *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,* No. 03 Civ. 7248(JGK), 2004 WL 224505, at *6 (S.D.N.Y. Feb.5, 2004).

**25.** 15 U.S.C. § 78u–4 (2004).

**26.** *See* Tr. at 15–17.

**27.** *Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.),* 311 B.R. 345, 349 (S.D.N.Y.2003).

slow the pace of litigation dramatically. If each of the actions removed from state court were remanded, it would lead to duplicative motion practice and repetitious discovery, as well as requiring common issues to be resolved separately by courts across the country." [28]

Other judges in this Circuit are in agreement.[29]

The plaintiff has failed to convince the Court that adjudication in Illinois would not "complicate and slow down the resolution" of this case and the others pending in this Court. The plaintiff therefore has not made the showing required for abstention under Section 1334(c)(2). The Court likewise would not abstain under Section 1334(c)(1) because the importance of coordinating this proceeding with the international bankruptcy and the Securities Fraud Action outweighs any interest in comity with Illinois courts or Illinois law.

### Conclusion

The plaintiff's motion to remand this action is denied.

SO ORDERED.

---

**28.** *New York City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.),* 293 B.R. 308, 331 (S.D.N.Y.2003).

**29.** *See Tow v. Credit Suisse First Boston Corp.,* No. CIVA3:04CV560(CFD), 2004 WL 1660576, at *3 (D.Conn. July 20, 2004); *see also Connecticut Resources Recovery Authority v. Lay,* 292 B.R. 464, 471–72 (D.Conn.2003)

("CRRA's proof that the action could be timely adjudicated in state court consists of a statement that this is so, without addressing the ramifications of the size and complexity of the litigation, and the judicial inefficiency of litigating common issues in courts across the country.").